**Mehdi HUSSAIN and Dolat M. Hussain, Appellants,**

v.

**BACHE & COMPANY, INC., et al.**

**No. 75–1684.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 23, 1977.

Decided Aug. 12, 1977.

J. Dapray Muir, Washington, D.C., with whom Max A. Stolper, Washington, D.C., was on the brief for appellants.

T. Grant Callery, Washington, D.C., for appellees. Steven A. Winkelman, Washington, D.C., was on the brief for appellees.

Before BAZELON, Chief Judge, and McGOWAN and MacKINNON, Circuit Judges.

Opinion for the Court filed by MacKINNON, Circuit Judge.

Concurring Opinion filed by McGOWAN, Circuit Judge.

MacKINNON, Circuit Judge:

The present appeal is from an order by the District Court for the District of Columbia staying trial proceedings in that court pending the outcome of arbitration on several of the counts alleged. The complaint revolves around the handling of a commodities speculation account of appellants Mehdi and Dolat Hussain by the investment company defendant-appellee, Bache & Co. The contract between the Hussains and Bache & Co. contained an arbitration clause. Appellees have moved to dismiss the appeal as one taken from an interlocutory order, without certification by the district court.

The appealability of the district court's stay order involves one of the more abstruse issues in federal appellate practice. 28 U.S.C. § 1291 provides for appellate review of all "final decisions of the district courts of the United States." In no sense, however, can the district court's decision to stay proceedings pending arbitration be construed as a final decision. Appellants only weakly present that argument, advancing the proposition that their rights to federal court adjudication of claims under the securities laws will be lost by the arbitration. But if appellants can prove that any issues sent to arbitration should have been heard in the first instance in federal court, they will be entitled to exactly such a hearing. Hence, no final determination as to any of appellants' rights has yet been made.

If any appeal is to be permitted, therefore, it must arise under the interlocutory provisions of 28 U.S.C. § 1292(a):

The courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . . . .

An order staying proceedings before a trial court pending arbitration has been analogized to an injunction within the meaning of 28 U.S.C. § 1292(a)(1) under certain circumstances. The United States Supreme Court introduced the rule identifying those circumstances in *Baltimore Contractors v. Bodinger*, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955). That case was decided with an historical background drawn from three previous Supreme Court decisions much closer in time to the days when law and equity were separated in federal courts. *Enelow v. New York Life Insurance Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Insurance Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942), and *City of Morgantown v. Royal Insurance Co.*, 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949) concerned the right to jury trial where a lawsuit involved both legal and equitable issues. Specifically, that series of cases dealt with the appealability of a trial judge's decision as to which counts would be tried first. Where substantial legal issues were involved, to hear the equitable issues first was in effect a decision postponing the legal action with its right to jury, and that was appealable; but if the principal issue in the case was equitable, a trial judge's decision to proceed with

that issue was solely a matter of arranging his own calendar most efficiently, and that was not appealable.

In *Baltimore Contractors*, an action was brought for an equitable accounting of profits from a construction venture. The defendant moved for a stay of the litigation so that arbitration of the dispute could be had, as called for by the agreement. The trial judge refused such a stay, and the Supreme Court held that refusal to be non-appealable. While recognizing that account had to be taken of the "developing need to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence," 348 U.S. at 181, 75 S.Ct. at 252, it was also crucial, in the Court's estimation, to retain secure from interlocutory appeal the trial court's "power to stay mere steps" in the litigation, 348 U.S. at 183, 75 S.Ct. 249. That counterpoint of interests is crucial to a determination of the appealability of the interlocutory order before this court. It is important to recognize that those two concerns underlay the rule that the Supreme Court next announced, even though subsequent case law has shown more deference to the strictures of that rule than to the policies motivating it.

That rule was that if the action being stayed was one that would have been brought at law rather than in equity, then the decision on staying the action for the sake of arbitration would be appealable; otherwise not. To stay for the sake of arbitration was to interpose an equitable defense; hence, the process was analogous to the Chancellor interrupting proceedings before a Law Court. If the action being stayed was equitable in nature, however, the matter was entirely within the Chancellor's control, and there was not the degree of interference necessitating an immediate appeal.

This rule has been roundly criticized. Indeed, the *Baltimore Contractors* decision itself stated:

> The reliance on the analogy of equity power to enjoin proceedings in other courts has elements of fiction in this day of one form of action. The incongruity of taking jurisdiction from a stay in a law type and denying jurisdiction in an equity type proceeding springs from the persistence of outmoded procedural differentiations. Some simplification would follow from an assumption or denial of jurisdiction in both. The distinction has been applied for years, however, and we conclude that it is better judicial practice to follow the precedents which limit appealability of interlocutory orders, leaving Congress to make such amendments as it may find proper.

348 U.S. at 184–85, 75 S.Ct. at 254. Subsequent criticism has come from this court,[1] from other circuits,[2] and from legal commentators.[3] Some decisions have chosen simply to ignore the test, in favor of a common-sense understanding of what permanent effect would be worked upon the parties by the stay pending arbitration.[4] Other courts have asked whether the stay would interfere with ongoing arbitration,

---

1. *Travel Consultants Inc. v. Travel Management Corp.*, 125 U.S.App.D.C. 108, 112, 367 F.2d 334, 338 (1966), *cert. denied*, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 785 (1967): "We are aware of the anomaly in taking jurisdiction of the appeal from one part of the order but not of the appeal of the other part. This ensues from the premises of *Baltimore Contractors*. . . We believe it is our duty to persist with this anomalous rule unless it is changed by Congress or the Supreme Court."

2. *See, e. g., Chapman v. Local 581, ILGWU*, 401 F.2d 626, 628 (4th Cir. 1968): "There is room for dissatisfaction with a rule that tolerates opposite results depending upon the pure fortuity of the outcome of the race to the court-

house" (using *A & E Plastik Pak Co. v. Monsanto Co.*, 396 F.2d 710 (9th Cir. 1968) as an example of such an anomaly); *Wallace v. Norman Industries, Inc.*, 467 F.2d 824, 827 (5th Cir. 1972).

3. *See, e. g.,* Note, *Appealability of Stay Orders in the Federal Courts*, 47 Minn.L.Rev. 1099 (1963); C. Wright, Law of Federal Courts (3d ed. 1976) 514–515.

4. *See, e. g., Blount Bros. Const. Co. v. Troitino*, 127 U.S.App.D.C. 99, 381 F.2d 267 (1967); *Beckley v. Teyssier*, 332 F.2d 495 (9th Cir. 1964).

sensing that such an interruption inherently carried more of the flavor of an injunction.[5]

The most troublesome cases for applying *Baltimore Contractors* are those in which both legal and equitable issues are involved. This court has approached the situation where the claim is equitable but the counterclaim legal as appealable only as to the counterclaim (where motions to stay pending arbitration were at issue). *Travel Consultants, Inc. v. Travel Management Corp.*, 125 U.S.App.D.C. 108, 367 F.2d 334 (1966). When the plaintiff's claim has been for both equitable and legal relief, courts have tried to determine whether the equitable remedy was "merely incidental" to the legal relief or constituted an independent theory or type of relief. In *Chapman v. Local 581, ILGWU*, 401 F.2d 626, 627 (4th Cir. 1968), the court ruled that the employees' complaint about wrongful withholding of vacation pay benefits was of less practical concern to them than a declaration of their rights in the future. The court thereby characterized their action as an equitable one and the district court's decision denying arbitration was held not to be appealable. The Ninth Circuit found a demand for money damages to be "plainly subordinate to" the equitable relief sought (injunction, declaratory judgment, accounting, and imposition of a trust), and similarly found unreviewable a district court's decision to stay proceedings pending arbitration. *Alexander v. Pacific Maritime Association*, 332 F.2d 226 (9th Cir. 1964).

This pattern of letting any serious and independent equity element color the entire action is itself in keeping with the ancient equity practice that the Chancellor could effect all necessary relief, including legal relief, as long as the case was properly before him on a non-frivolous equitable ground, for "equity delights to do justice, and that not by halves." 1 Pomeroy's Equity Jurisprudence (5th ed. S. Symons 1941) § 181; 30 C.J.S. Equity § 104 (1965). Where constitutional rights to jury trial are involved, of course, the Supreme Court has

exactly reversed this presumption of characterization, *Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *Dairy Queen v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), but no such constitutional issues are raised here.

With this background, we must address the complaint brought in federal district court by the Hussains. This complaint was prompted by an action commenced by Bache & Co. against Hussain to collect the debit balance in his account. That action had been brought in the Circuit Court for Montgomery County, Maryland. The Hussains responded by denying the debit and counterclaiming for common law fraud and breach of fiduciary responsibility, in violation of the federal securities laws. The Maryland court dismissed so much of the counterclaim as stated a federal action, and the Hussains brought those charges in the U.S. District Court for the District of Columbia.

■ The relief prayed for in the Hussains' complaint was as follows:

[P]laintiffs demand judgment against defendants, jointly and severally, in the amount of $50,000, with interest as provided by law and a reasonable attorney's fee, or the rescission of the subject sugar transactions and restitution of the securities referred to hereinabove, and such other and further relief as to the court appears reasonable and just.

It is true that one of the Hussains' claims is that Bache & Co. violated federal securities laws, for which the Hussains may bring a private right of action. *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). The complaint states an action at law for the torts of misrepresentation and breach of fiduciary relationship, with the federal securities laws providing the statutory standard of care. But the Hussains' underlying objection was to the manner in which their account was handled by Bache & Co. in making sugar transactions. The setting aside of their brokerage contract would relieve the Hussains of

---

**5.** *See A & E Plastik Pak Co. v. Monsanto Co.*, 396 F.2d 710 (9th Cir. 1968); *Power Replacements, Inc. v. Air Preheater Co.*, 426 F.2d 980 (9th Cir. 1970).

any debt owed to Bache & Co. on account of the sugar dealings and would also return to the Hussains the securities they had deposited as collateral. Hence, the equitable remedy of rescission for which the Hussians pray is really at the heart of plaintiffs' case.

At the very least, the complaint states a substantial equitable claim capable of affording the petitioners the full relief they seek. We hold that the equity claim here is substantial enough that, under the maxim cited above, had this case been brought before the joinder of law and equity, the equity court would have been empowered to afford all necessary relief including legal remedies. Accordingly, we rule that the underlying cause of action was equitable for purposes of *Baltimore Contractors*, and that the stay order is thus not appealable, being merely an exercise of the trial court's power to arrange the most efficient way of proceeding.

It is likely that *Baltimore Contractors* will not continue to cast its antiquated shadow of an equity-versus-law test upon modern interlocutory appellate practice. The demise of that rule cannot be far away. *Baltimore Contractors* provides guidance on the question of appealability, however, even if its equity-law test is held to be inapplicable. In explaining the legislative genesis of the interlocutory appeal statute, the Court recognized two important concerns: 1) that appeals should be permitted to avoid serious or irreparable harm, and 2) that trial courts should be permitted to order the deliberations before them most efficiently: [6]

> No discussion of the underlying reasons for modifying the rule of finality appears in the legislative history, although the changes seem plainly to spring from a developing need to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence. . . . The Congress is in a position to weigh the competing interests of the dockets of the trial and appellate

courts, to consider the practicability of savings in time and expense, and to give proper weight to the effect on litigants.

384 U.S. at 181, 75 S.Ct. at 252. If the law-equity test is to be abandoned, therefore, it is expectable that questions of appealability will be resolved, at least in part, by reference to these principles. The facts of the present case are open to analysis under this rationale as an independent and sufficient basis for the outcome.

Nothing that the Hussains seek will be irretrievably lost by the additional delay from going to arbitration. They allege the right to a federal forum for their charges of federal securities law violations. The trial court awarded just that, by severing the counts stating federal securities act violations and holding them in abeyance pending arbitration. If his decision was inaccurate, the Hussains will have a chance to argue that when the entire case comes up on appeal. And if they persuade this court of that fact, a remand to have the issues that were sent to arbitration tried *de novo* by the district court will result.

On the second criterion, this was no wholesale delegation of decisional authority by the district judge. Rather, he reflectively distinguished federal securities claims from pendent claims in the exercise of his discretion as to the most efficient conduct of the litigation. It is just such a decision ordering trial proceedings that the Supreme Court in *Baltimore Contractors* intended to be free from review until the entire case had finished. Otherwise, the efficiency of trials would be greatly reduced.

Hence, considering both of the factors announced in *Baltimore Contractors*, the present order of arbitration cannot be appealed. No irreparable or even serious consequence follows from the stay order. The Hussains do have a right to a federal forum for their securities act allegations, and they

---

**6.** Respect for these principles clearly underlies those decisions cited above which have chosen to ignore the equity-law rule in favor of focusing on whether the stay order was inherently like an injunction, whether it was more like an exercise of trial court procedural discretion, and whether any ongoing arbitration was being interrupted or not.

have not been and will not be deprived of it. The trial court's decision was of a type that should not be second-guessed in midstream. Appellee's motion to dismiss the appeal should be granted.

*So ordered.*

McGOWAN, Circuit Judge, concurring:

I concur in the result and in much of the court's opinion, adding these words only because my concept of the nature and significance of the equitable claim made by appellants differs from that stated in the opinion. Appellants purport to be aggrieved because the broker handling transactions in securities for them had, either recklessly or improvidently, so it is alleged, encouraged them to speculate in commodities transactions. When this ended unhappily, appellants sought relief in the form of either $50,000 in damages, or restitution of the securities held by the broker for their account which had been sold to make good the losses under the commodities contracts. Although the complaint purported to seek rescission of those contracts, that was obviously a frivolous request for relief since those contracts with third parties stood on their own independent legal footing. Such rescission was not, however, essential to the claim for restitution. The securities in question were precisely identified in the complaint, and appear to be of the kind that are publicly traded.

Appellants are thus left in the position of representing to the court that they want either $50,000, a relief customarily thought of as legal in nature, or restitution of the securities, a claim traditionally sounding in equity. The complaint does not suggest that appellants had a preference for either of these claims, or thought of one as bulking larger than the other; and certainly it cannot be said that the equitable claim is only incidental to the legal. Under these circumstances, a finding of nonappealability seems to me to be plainly justified. *See Danford v. Schwabacher*, 488 F.2d 454, 457 (9th Cir. 1973).