John M. LEE et al., Appellees,

v.

PLY*GEM INDUSTRIES, INC., et al., Appellants.

No. 77–1008.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 6, 1977.

Decided Jan. 11, 1979.

---

Jay F. Gordon, New York City, with whom George Berger, New York City, was on the brief, for appellants. John F. McCarthy, III, Washington, D. C., also entered an appearance for appellants.

Coleman R. Rosenfield, Atty., Fort Lauderdale, Fla., of the Bar of the Supreme Court of Florida, pro hac vice, by special leave of Court, with whom Michael D. Hausfeld, Washington, D. C., was on the brief, for appellee.

Before BAZELON, LEVENTHAL and ROBINSON, Circuit Judges.

Opinion for the Court filed by SPOTTS-WOOD W. ROBINSON, III, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellees are operators of retail stores in the Washington-Baltimore area known as Ply*Gem paneling centers. They instituted this litigation in the District Court for the District of Columbia against the Ply*Gem companies, related concerns engaged in the manufacture and marketing of wood paneling and associated products.[1] One of these companies, Ply*Gem of Laurel, Inc., licensed appellees to operate their paneling centers, which feature Ply*Gem products as their principal line and utilize Ply*Gem trademarks and tradenames in their advertising. The first two counts of the complaint charge the companies with foisting

---

1. Ply*Gem Industries, Inc., a New York corporation, is the parent of Ply*Gem Manufacturing Corporation, which is not a party to the case. At one time Ply*Gem Manufacturing Corporation owned all of the stock of Ply*Gem Home Centers, Inc., formerly known as The Paneling Studios, Inc. Ply*Gem Home Centers performed management services for various corporations, including Ply*Gem of Laurel, Inc., its wholly-owned subsidiary and appellees' franchisor. On December 31, 1974, Ply*Gem Home Centers was merged into Ply*Gem Industries, whereupon Ply*Gem of Laurel became a wholly-owned subsidiary of Ply*Gem Industries. Affidavit of Bernard Hewitt, Chairman of the Board of Ply*Gem Industries, at 1–2, Appellants' Appendix (App.) 165–166.

exclusive dealing and tying arrangements upon their franchisees in violation of Section 1 of the Sherman Act[2] and Section 3 of the Clayton Act.[3] The remaining three counts allege fraud, breach of contract and breach of fiduciary duty.[4]

Appellants, the Ply*Gem companies, moved to dismiss the action for lack of personal jurisdiction and for improper venue. The District Court rebuffed these challenges, finding that the companies had transacted business in the District of Columbia at the time of the alleged antitrust violations [5] and deeming that fact sufficient to sustain venue and extraterritorial service of process under Section 12 of the Clayton Act.[6] The companies also requested the court to stay prosecution of the fraud, breach of contract and breach of fiduciary duty counts pending arbitration of those claims pursuant to a provision common to the franchise agreements.[7] The court denied the stay, reasoning that "[a]rbitration will not resolve the basic antitrust claims and the parties have already attempted arbitration without success." [8]

This ensuing appeal tenders several issues for our consideration. We conclude initially that the District Court's order refusing a stay is appealable,[9] and that its denial of the motion to dismiss for want of proper venue and service is also properly before us.[10] We then affirm the court's disposition of the latter motion.[11] We reverse, however, the order refusing to stay proceedings on the common law counts to enable arbitration.[12]

## I. APPEALABILITY

### A. *The Stay Order*

■ The District Court's refusal to stay itself obviously is not a final order for purposes of this appeal.[13] It is well established, however, that an order disposing of a motion for a stay is to be treated as a ruling on a motion for an injunction—and as such, though interlocutory, immediately appealable [14]—provided that two conditions are satisfied.[15] First, the litigation in which the order is entered must be legal rather than equitable in character.[16] Second, the stay must have been sought to enable the prior determination of an equitable defense.[17]

2. 15 U.S.C. § 1 (1976).

3. 15 U.S.C. § 14 (1976).

4. See Complaint ¶¶ 48–65, App. 21–34.

5. *Lee v. Ply*Gem Indus., Inc.,* No. 76–1492 (D.D.C. Nov. 29, 1976) (unreported), App. 207–208.

6. 15 U.S.C. § 22 (1976).

7. See note 61 *infra* and accompanying text.

8. *Lee v. Ply*Gem Indus., Inc., supra* note 5, at 1, App. 207.

9. Part I(A) *infra.*

10. Part I(B) *infra.*

11. Part II *infra.*

12. Part III *infra.*

13. See 28 U.S.C. § 1291 (1976).

14. Pursuant to 28 U.S.C. § 1292(a)(1) (1976).

15. *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 180–185, 75 S.Ct. 249, 252–254, 99 L.Ed. 233, 238–240 (1955); *Shanferoke Coal &*

*Supply Corp. v. Westchester Serv. Corp.,* 293 U.S. 449, 451–452, 55 S.Ct. 313, 314, 79 L.Ed. 583, 586 (1935); *Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 381–383, 55 S.Ct. 310, 311, 79 L.Ed. 440, 442–443 (1935); *Hussain v. Bache & Co., Inc.,* 183 U.S.App.D.C. 339, 562 F.2d 1287 (1977); *Travel Consultants, Inc. v. Travel Management Corp.,* 125 U.S.App.D.C. 108, 111, 367 F.2d 334, 337 (1966), *cert. denied,* 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 785 (1967); *Teamsters Int'l v. Stillpass Transit Co.,* 128 U.S.App. D.C. 221, 222 n.1, 386 F.2d 983, 984 n.1 (1967). *Cf. City of Morgantown v. Royal Ins. Co.,* 337 U.S. 254, 257–258, 69 S.Ct. 1067, 1069, 93 L.Ed. 1347, 1349–1350 (1949).

16. See, *e. g., Hussain v. Bache & Co., Inc., supra* note 15; *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1201 (2d Cir. 1970); *Mercury Motor Express, Inc. v. Brinke,* 475 F.2d 1086, 1090–1091 (5th Cir. 1973); *cf. United States v. Chelsea Towers, Inc.,* 404 F.2d 329, 330 (3d Cir. 1968).

17. See, *e. g., Hines v. D'Artois,* 531 F.2d 726, 729 (5th Cir. 1976); *Chronicle Pub. Co. v. National Broadcasting Co.,* 294 F.2d 744, 746 (9th Cir. 1961); *Ephraim Freightways, Inc. v. Red Ball Motor Freight, Inc.,* 376 F.2d 40, 41 (10th Cir.), *cert. denied,* 389 U.S. 829, 88 S.Ct. 92, 19 L.Ed.2d 87 (1967).

This rule, much-maligned as divorced from any rational or coherent appeals policy,[18] is the result of reasoning by historical analogy to the days when the chancellor would enjoin a court of law from proceeding in an action after an equitable defense thereto had been asserted.[19]

An agreement to arbitrate a legal dispute is considered an equitable defense.[20] Thus the appealability of the order denying the stay here turns wholly upon whether the underlying litigation is legal or equitable in nature. If legal, the ruling is analogous to the chancellor's refusal to enjoin proceedings in a law court; if equitable, the order is comparable to the chancellor's decree on the sequence in which issues shall be tried in his own court.

All five counts of the franchisees' complaint clamor for extensive damages.[21] The first two, incorporating the antitrust claims, also pray that the Ply*Gem companies "be required to refund to the [franchisees] all profits and/or kickbacks and/or mark-ups of Ply*Gem and/or its affiliates in connection with the sale of merchandise, supplies, material and services to the" franchisees.[22] Additionally, the first four counts request

"such other relief as shall be deemed just and proper."[23]

We thus are faced with a complaint seeking both equitable and legal relief, presenting what we have called "the most troublesome case[ ]"[24] in this area of federal appellate jurisdiction. Because piecemeal appeals are disfavored, we have embraced a presumption that the pending action is equitable, but that may be overborne if the request for equitable relief is incidental or clearly subordinate to essentially legal claims.[25] We believe that the franchisees' claims are basically legal.

The principal relief sought is an award of damages.[26] Although the call for return of profits, kickbacks and mark-ups arguably constitutes a plea for an accounting and restitution, we have held that an entreaty of this sort does not divest an action for damages of "its character as an action at law . . . ."[27] Moreover, recoupment of these items is asked in the antitrust counts, while the order appealed from is a refusal to stay proceedings on the common law counts.[28] The franchisees also rely on the prayer of the first four counts for "such other relief as shall be deemed just and

18. E. g., *Baltimore Contractors, Inc. v. Bodinger, supra* note 15, 348 U.S. at 184, 75 S.Ct. at 254, 99 L.Ed. at 240 ("[t]he reliance on the analogy of equity power to enjoin proceedings in other courts has elements of fiction in this day of one form of action[;] [t]he incongruity of taking jurisdiction from a stay in a law type and denying jurisdiction in an equity type proceeding springs from the persistence of outmoded procedural differentiations"); *Hussain v. Bache & Co., Inc., supra* note 15, 183 U.S. App.D.C. at 343, 562 F.2d at 1291 ("[i]t is likely that *Baltimore Contractors* will not continue to cast its antiquated shadow of an equity-versus-law test upon modern interlocutory appellate practice").

19. See 16 C. Wright & A. Miller, Federal Practice, § 3923, at 48–53 (1977).

20. *Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp., supra* note 15.

21. The franchisees demand $3,000,000 in the antitrust counts and $8,000,000 in the three common law counts. App. 20, 34.

22. App. 20–21.

23. App. 21–28.

24. *Hussain v. Bache & Co., Inc., supra* note 15, 183 U.S.App.D.C. at 342, 562 F.2d at 1290.

25. *Id.* See *Danford v. Schwabacher*, 488 F.2d 454, 457 (9th Cir. 1973); *cf. Schine v. Schine*, 367 F.2d 685, 688 (2d Cir. 1966) (Friendly, J., concurring).

26. See note 21 *supra*.

27. *Travel Consultants, Inc. v. Travel Management Corp., supra* note 15, 125 U.S.App.D.C. at 112, 367 F.2d at 338. See *Excavation Constr., Inc. v. Carpenters' Dist. Council*, 519 F.2d 814–815 (4th Cir. 1975); *Brannon v. Warn Bros., Inc.*, 508 F.2d 115, 118–119 (9th Cir. 1974).

28. *Cf. Travel Consultants, Inc. v. Travel Management Corp., supra* note 15, 125 U.S.App. D.C. at 111–112, 367 F.2d at 337–338 (taking jurisdiction of an interlocutory order insofar as it stayed a legal counterclaim pending arbitration but not insofar as it stayed an equitable claim).

proper." [29] This boilerplate is simply a by-product of cautious pleading, however, and does not alter the fundamental nature of the litigation.[30]

■ In short, the historical analysis by which the appealability of orders granting or denying stays of judicial proceedings is to be determined indicates that the order appealed from is a contemporary analogue to the chancellor's refusal to enjoin an action at law. We therefore have jurisdiction.[31]

### B. The Denial of the Motion to Dismiss

■ In general, of course, an order denying a motion to dismiss is not immediately appealable.[32] But, on appeal of an interlocutory order granting or denying an injunction, an appellate court may properly determine whether there is an "insuperable objection to maintaining the bill" and hence whether dismissal is required.[33] In *Deckert v. Independence Shares Corp.*,[34] the Supreme Court held that a federal court of appeals reviewing an interlocutory injunctive order has power to pass on the correctness of a denial of a motion to dismiss for want of jurisdiction and failure to state a

cause of action. This principle applies with full force to the Ply*Gem companies' motion to dismiss for improper venue [35] and lack of personal jurisdiction.[36] Thus, the District Court's rejection of the companies' challenge to its venue and jurisdiction is properly before us.

### II. VENUE AND PERSONAL JURISDICTION UNDER SECTION 12 OF THE CLAYTON ACT

The Ply*Gem companies implore us to order dismissal of the antitrust claims for improper venue and ineffective service of process. With respect to each of these prerequisites to their action, the franchisees rely primarily [37] upon Section 12 of the Clayton Act, which provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district wherein it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.[38]

---

**29.** App. 21, 28.

**30.** See *Travel Consultants, Inc. v. Travel Management Corp., supra* note 15, 125 U.S.App. D.C. at 112, 367 F.2d at 338.

**31.** Pursuant to 28 U.S.C. § 1292(a)(1) (1976).

**32.** *Catlin v. United States*, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945); *English v. Cunningham*, 108 U.S.App.D.C. 358, 282 F.2d 841 (1960).

**33.** *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 287, 61 S.Ct. 229, 232, 85 L.Ed. 189, 193 (1940), quoting *Meccano, Ltd. v. Wanamaker*, 253 U.S. 136, 141, 40 S.Ct. 463, 465, 64 L.Ed. 822, 826 (1920). See *Aerojet-Gen. Corp. v. American Arbitration Ass'n*, 478 F.2d 248, 252–253 (9th Cir. 1973).

**34.** *Supra* note 33.

**35.** See *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir.), cert. denied, 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977); *National Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961); *Maryland v. Atlantic Aviation Corp.*, 361 F.2d 873, 874 (3d Cir.), cert. denied, 385 U.S. 931, 87 S.Ct. 290, 17 L.Ed.2d 212 (1966).

**36.** *San Filippo v. United Bhd. of Carpenters & Joiners*, 525 F.2d 508, 510–513 (2d Cir. 1975); see 9 J. Moore, Federal Practice, ¶ 110.25[1] at 271 (2d ed. 1948).

**37.** The complaint, ¶ 1, App. 4, also predicates venue upon § 4 of the Clayton Act, 15 U.S.C. § 15 (1976), which reads:

> Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

We focus on the broader provisions of § 12, however, since the franchisees' strongest ground for asserting venue here seems to be that the companies transacted business in the District of Columbia.

**38.** 15 U.S.C. § 22 (1976).

The companies moved to dismiss the suit on the grounds that venue was not properly laid in the District of Columbia and that personal jurisdiction was not obtained over them. The District Court denied the motion, holding that the "[d]efendants had a continuing relationship with some plaintiff corporations found in the District of Columbia," that "revenues were obtained from the District of Columbia in sufficient quantity," and that "it is not essential to venue that business must still be transacted as of the date of the filing of the complaint."[39] We concur with the District Court, though we find it necessary to expand somewhat upon its rationale.

Ply*Gem of Laurel authorized the franchisees to operate retail paneling stores exhibiting the Ply*Gem tradename and carrying products bearing the Ply*Gem trademark.[40] Ply*Gem of Laurel further covenanted to provide each franchisee with a guaranteed source of supply of Ply*Gem and other products and with training and guidance in the management of their outlets.[41] Each franchise was granted for a period of fifteen years, running well into the 1980s.[42] In return, each of the franchisees paid Ply*Gem of Laurel $10,000.[43]

Effectiveness of each agreement was contingent upon approval by Ply*Gem Industries, the corporate parent of Ply*Gem of Laurel.[44]

The Ply*Gem companies launch their attack upon the propriety of suit in the District of Columbia from two facts: Ply*Gem of Laurel sold its last shipment of products to a plaintiff franchisee located in the District—Harbinger's, Inc.—in July, 1976, but the franchisees' action was not commenced until August 12, 1976.[45] The temporal reference of Section 12's "transact[ing] business" test, the companies argue, is the date suit is brought. Accordingly, they conclude, venue may not be laid in the District under Section 12 and extraterritorial service on them was not authorized thereby.

We disavow the companies' hyperliteral interpretation of Section 12. To be sure, the section is cast in the present tense;[46] but Congress may have intended it to be read in the historical present tense.[47] The discernible decisional trend is to deem a judicial district an appropriate forum under Section 12 so long as the defendant transacted substantial business therein when the events giving rise to the putative antitrust

**39.** *Lee v. Ply*Gem Indus., Inc., supra* note 5, at 1, App. 207.

**40.** Operators' Sub-License Agreement at 2–3, App. 36–37.

**41.** *Id.* at 3, App. 36.

**42.** *Id.* at 1–2, App. 35–36.

**43.** *Id.*

**44.** *Id.* at 13, App. 47. In light of our construction of § 12, see notes 46–58 *infra* and accompanying text, we need not consider whether the award of franchise rights for a period commencing before but extending well beyond the date suit is filed, when made in exchange for a substantial fee, is itself the transaction of business after commencement of suit.

**45.** Affidavit of Bernard Hewitt, *supra* note 1, at 3–4, App. 168–169. According to the affidavit, Ply*Gem of Laurel's sales to Harbinger's, Inc., amounted to $9,625 in 1975 and $3,867.63 in 1976. *Id.* at 4, App. 169. These were not isolated transactions, however, and "we think the volume of business was such here as to surmount any attack of a de minimis nature."

*B. J. Semel Assocs., Inc. v. United Fireworks Mfg. Co.,* 122 U.S.App.D.C. 402, 407, 355 F.2d 827, 832 (1965); see *United States v. Scophony Corp.,* 333 U.S. 795, 807–808, 68 S.Ct. 855, 861–862, 92 L.Ed. 1091, 1100–1101 (1948).

**46.** See text *supra* at note 38.

**47.** Compare 28 U.S.C. § 1391(c) (1976), which provides:

> A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

The doing-business provision of this section has been interpreted as satisfied by a showing that the defendant corporation did business in the district at the time the cause of action accrued. *E. g., Snyder v. Eastern Auto Distrib., Inc.,* 357 F.2d 552, 556 (4th Cir.), *cert. denied,* 384 U.S. 987, 86 S.Ct. 1889, 16 L.Ed.2d 1004 (1966); *Farmers Elevator Mut. Ins. Co. v. Carl J. Austad & Sons, Inc.,* 343 F.2d 7, 12 (8th Cir. 1965).

violation occurred.[48] The policy and legislative history of Section 12, to which we now turn, persuade us to hew to that course.

General venue statutes are drafted to specify trial locations convenient for parties and witnesses.[49] Section 12, by contrast, is a special venue provision tailored for corporate antitrust defendants, whose convenience Congress was not particularly solicitous of.[50] Section 12, this court has said, "was intended by Congress to be an important facet in the scheme of private remedies devised to promote the objectives of the antitrust laws."[51]

As introduced, the provision that was to become Section 12 simply reiterated the language of Section 7 of the Sherman Act, which specified that suits against a corporation could be brought only in the district where it was an "inhabitant" or could be "found."[52] This was unsatisfactory to the House, where Congressman Cullop summed up the sentiment: "I do not want to make a resident of California come to Trenton, N.J. to bring a suit for violation of this law, but I want him to sue at home in the jurisdiction where the cause of action arose."[53] Toward that end, the House amended the provision by adding "or has an agent."[54] The Senate Judiciary Committee rejected this amendment and changed the provision to its present form.[55] The final version attracted little attention until Congressman Webb, the manager of the bill in conference, explained just before approval of the Conference Report that "we have thrown the doors of the court wide open for the first time to every man who is injured. He can enter the court at his home and sue a man or corporation who injures him. . . . ."[56]

48. *Eastland Constr. Co. v. Keasbey & Mattison Co.*, 358 F.2d 777, 778–782 (9th Cir. 1966), *noted*, 65 Mich.L.Rev. 995 (1967); *Board of County Comm'rs v. Wilshire Oil Co.*, 523 F.2d 125, 131 (10th Cir. 1975). See also *Lamont v. Haig*, 192 U.S.App.D.C. 8 at 16 n.49, 590 F.2d 1124, at 1132 n.49 (1978) (liberal interpretation of the "transact[ing] business" requirement of § 12 to denote the time when the cause of action arose accords with its legislative history). But cf. *Sunbury Wire Rope Mfg. Co. v. United States Steel Corp.*, 230 F.2d 511, 512 (3d Cir. 1950) (holding venue proper because of waiver, but noting that § 12 requires that the defendant be transacting business in the forum district at the time suit is filed).

49. For example, 28 U.S.C. § 1391(b) (1976) confers venue in nondiversity suits in the district "in which the claim arose." This portion of § 1391(b) was added by amendment in 1966, Act of Nov. 2, 1966, Pub.L. No. 89–714, § 1, 80 Stat. 1111, in order to "facilitate the disposition of . . . claims by providing, in appropriate cases, a more convenient forum to the litigants and witnesses involved." H.R.Rep.No. 1893, 89th Cong., 2d Sess. 2 (1966).

50. In *United States v. National City Lines*, 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948), the Court held that the choice of forum afforded antitrust plaintiffs by § 12 could not be subverted by application of the doctrine of *forum non conveniens*. The Court explained:

When . . . Congress came to face the problem of making the nation's antitrust policy more effective through the Clayton Act's provisions, that body was not confronted with any problem of abuse by plaintiffs in selecting venue for antitrust suits; nor was it concerned with any question of providing means by which the defendants in such suit might defeat the plaintiff's choice to serve their own convenience. Congress' concern was quite the opposite. It was to provide broader and more effective relief, both substantively and procedurally, for persons injured by violations of its antitrust policy. Insofar as convenience in bringing suit and conducting trial was involved, the purpose was to make these less inconvenient for plaintiffs or . . . to remove the 'often * * * insuperable obstacle' thrown in their way by the existing venue restrictions.

Id. at 581, 68 S.Ct. at 1174, 92 L.Ed. at 1589–1590, quoting *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 374, 47 S.Ct. 400, 403, 71 L.Ed. 684, 689 (1927) (footnote omitted). See also 1 J. Moore, Federal Practice, ¶ 0.140[1.–1] at 1308–1309 (2d ed. 1948).

51. *B. J. Semel Assocs., Inc. v. United Fireworks Mfg. Co., supra* note 45, 122 U.S.App.D.C. at 405, 355 F.2d at 830 (footnote omitted).

52. H.R.Rep.No.627, 63d Cong., 2d Sess. 20 (1914).

53. 51 Cong.Rec. 9416 (1914).

54. *Id.* at 9466, 9607.

55. S.Rep.No.698, 63d Cong., 2d Sess. 73 (1914).

56. 51 Cong.Rec. 16342 (1914). The House rejected an amendment to expand § 12 to permit venue "where the cause of action or any part thereof arises." 51 Cong.Rec. 9608 (1914) (remarks of Congressman Sumners). But this

■ While this history does not specifically answer the question presented to us, we think we would dishonor the evident purpose of Congress should we rule that venue under Section 12 is improper as to a corporate defendant that transacts substantial business in a district, which assertedly gives rise to antitrust violations, but then departs prior to the institution of suit.[57] We thus conclude that at least in situations where the business activities relied on to establish Section 12 venue are bound up in the course of conduct alleged to transgress the antitrust laws, the temporal frame of reference of that section is the point at which the cause of action arises, not the date suit is commenced.[58]

■ The upshot of this is that venue as to Ply*Gem of Laurel is proper in the District of Columbia. And since this litigation must continue, we leave to the District Court the initial determination of whether the related corporate defendants, Ply*Gem Industries, Inc., and Ply*Gem Home Centers, Inc., have themselves transacted business in the District either independently or by controlling the operations of Ply*Gem of Laurel.[59] These matters are not sufficiently explicated by the franchisees' complaint or the companies' moving affidavit to per-

---

was probably because the "or has an agent" clause, see text at note 54 supra, and the later, yet more inclusive, "transacts business" language were thought to cover these situations. *United States v. National City Lines, supra* note 50, 334 U.S. at 583, 68 S.Ct. at 1175, 92 L.Ed. at 1590–1591; *Eastland Constr. Co. v. Keasbey & Mattison Co., supra* note 48, 358 F.2d at 781. See 51 Cong.Rec. 9608 (1914) (remarks of Representative Webb).

**57.** Language in *United States v. Scophony Corp., supra* note 45, 333 U.S. at 808, 68 S.Ct. at 862, 92 L.Ed. at 1101, supports the result we reach today:

> [Through § 12 Congress] relieved persons injured through corporate violations of the antitrust laws from the "often insuperable obstacle" of resorting to distant forums for redress of wrongs done in the places of their business or residence. A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due.

Quoting *Eastman Kodak Co. v. Southern Photo Materials Co., supra* note 50, 273 U.S. at 374, 47 S.Ct. at 403, 71 L.Ed. at 689 (footnote omitted).

It has been suggested, Note, *Venue: Then or Now? Section 22 of the Sherman Act,* 115 U.Pa.L.Rev. 1007, 1009 (1967), that reliance on this language as authority for construing § 12 to encompass the transaction of business at the time the cause of action accrues is unwarranted for two reasons. First, the Court was discussing the extraterritorial service provision of § 12, not its venue provision. Second, the Court was concerned with a foreign corporation whose withdrawal might preclude suit altogether, as distinguished from an American corporation necessarily subject to suit in some district. While a close reading of *Scophony,* in light of the authorities therein cited, *e. g., Peo-*

ple's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587 (1918) cited in *United States v. Scophony, supra* note 45, 333 U.S. at 808–809 n.19, 68 S.Ct. at 862 n.19, 92 L.Ed. at 1101 n.19, indicates that the quoted passage was primarily concerned with service, the Court was construing the "transacts business" phrase of § 12, which governs venue as well as the permissibility of extraterritorial service. And there is no reason to suppose that § 12 was designed to reach foreign national corporations but not American corporations.

**58.** The court in *In re Chicken Antitrust Litigation,* 407 F.Supp. 1285, 1293 (N.D.Ga.1975), opined that when business transacted in the forum district is related to the alleged antitrust violations, the "time of accrual" construction of § 12 may be correct. On the other hand, the court held, where the business conducted in the forum district prior to commencement of suit bears no relation to the cause of action, such business cannot be relied upon to lay venue under § 12. We have no occasion to consider the validity of the latter thesis.

**59.** On the control question, see *San Antonio Tel. Co., Inc. v. American Tel. & Tel. Co.,* 499 F.2d 349, 351–352 (5th Cir. 1974); *Tiger Trash v. Browning-Ferris Indus., Inc.,* 560 F.2d 818, 822–824 (7th Cir. 1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); *O.S.C. Corp. v. Toshiba Am., Inc.,* 491 F.2d 1064, 1066 (9th Cir. 1974).

It may be that Ply*Gem Home Centers provided sufficient management services to franchisees located in the District to justify a finding that it independently transacted business therein. See generally, *Eastman Kodak Co. v. Southern Photo Materials Co., supra* note 50. On this matter, tne franchisees' complaint is conclusory and the companies' affidavit unresponsive. Complaint ¶ 1, App. 4, Affidavit of Bernard Hewitt, *supra* note 1, at 2, App. 166.

mit a sound resolution of them on this appeal. In these circumstances, we think the franchisees should be afforded the opportunity to amend their complaint to state with more specificity just what business activities these defendants may have conducted in the District.[60]

## III. ARBITRATION

[7] We agree with the Ply*Gem companies, however, that the District Court erred in declining to stay proceedings on the common law counts of the franchisees' complaint pending arbitration. Each of the franchise contracts contains a provision specifying that "[a]ny controversy or claim arising out of or relating to this agreement, or the breach thereof, shall be settled by arbitration. . . ."[61] The enforceability of this stipulation is governed by the United States Arbitration Act,[62] under which an arbitration clause in a contract involving interstate commerce is made "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[63] The Act specifically requires a federal court in which suit is brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to stay its hand while arbitration ensues.[64]

There is no dispute among the parties over the scope of the arbitration provision of the franchise agreements: the common law claims are covered, while the antitrust claims are not.[65] Yet the franchisees concur in the District Court's refusal to stay proceedings on the common law counts, arguing that the issues raised therein are intertwined legally and factually with those generated by the antitrust counts. Invoking the so-called permeation doctrine,[66] they reason that where it would be impracticable for an arbitrator to separate the antitrust questions from the arbitrable ones, the entire action should be tried by the court lest the important public policies served by judicial resolution of antitrust controversies be subverted.

The franchisees misread the permeation doctrine. Many of our sister circuits have held that where substantial antitrust claims are legally and factually inextricable from arbitrable contract claims, arbitration may be stayed pending the court's decision on the antitrust issues.[67] This conclusion stems from two considerations. First, arbitral determinations are by statute accorded considerable deference in court; judicial authority to tamper with an arbitration award is limited.[68] Second, antitrust claims should not be resolved by arbitration. For one thing, antitrust violations are public matters, and Congress probably did not intend "the national interest in a competitive economy" to be subject to private methods of

**60.** *Lamont v. Haig, supra* note 48, 192 U.S.App. D.C. at 20, 590 F.2d at 1136.

**61.** Operator's Sub-License Agreement ¶ 20, App. 47.

**62.** 9 U.S.C. §§ 1–14 (1976).

**63.** 9 U.S.C. § 2 (1976).

**64.** 9 U.S.C. § 3 (1976).

**65.** Brief for Appellants at 8–9; Brief for Appellees at 9–10.

**66.** See cases cited *infra* note 67 and accompanying text.

**67.** *American Safety Equip. Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 825–827 (2d Cir. 1968); *Cobb v. Lewis*, 488 F.2d 41, 47 (5th Cir. 1974); *Applied Digital Tech., Inc. v. Continental Cas. Co.*, 576 F.2d 116, 117–119 (7th Cir. 1978); *Helfenbein v. International Indus., Inc.*, 438 F.2d 1068, 1070 (8th Cir. 1971); *Varo v. Comprehensive Designers, Inc.*, 504 F.2d 1103, 1104 (9th Cir. 1974); *Hunt v. Mobil Oil Corp.*, 410 F.Supp. 10, 25–26 (S.D.N.Y.1975), aff'd, 550 F.2d 68 (2d Cir.), *cert. denied*, 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977); cf. *Sibley v. Tandy Corp.*, 543 F.2d 540, 542–544 (5th Cir. 1976), *rehearing denied*, 547 F.2d 286, 287 (5th Cir.), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977). See also, Comment, *Private Arbitration and Antitrust Enforcement: A Conflict of Policies*, 10 Bost.C.Ind. & Comm.L.Rev. 406 (1969).

**68.** *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168, 176 (1953). See 9 U.S.C. § 10 (1976).

dispute resolution.[69] For another, the complexity of antitrust issues makes them "far better suited to judicial than to arbitration procedures."[70] Additionally, it has been thought to be of "questionable propriety"[71] to entrust the decision of antitrust questions to commercial arbitrators when "it is the business community generally that is regulated by the antitrust laws."[72]

We perceive no present need to evaluate the soundness of the permeation doctrine. For even in the cases fashioning and applying that doctrine, arbitration proceedings were simply postponed pending definitive resolution of the antitrust issues in a federal court.[73] They provide no authority for the ruling that the franchisees seek: that arbitrable claims become subject to adjudication in court merely because they are related to non-arbitrable claims. Protection of the policy interest furthered by judicial resolution of antitrust disputes does not require judicial proceedings so inclusive, given the court's capacity to stay arbitration proceedings when necessary or desirable.[74]

The District Court's refusal to stay litigation of the claims arising out of the franchise contracts pending arbitration deprived the Ply*Gem companies of the benefit of their bargain and ran counter to the Arbitration Act, which clearly expresses a mandate for judicial recognition of commercial arbitration agreements.[75] It must, then, be reversed.

The District Court's order denying the Ply*Gem companies' motion to dismiss the antitrust counts for want of personal jurisdiction and for improper venue is affirmed as to defendant Ply*Gem of Laurel. Its order refusing to stay proceedings on the common law counts of the franchisees' complaint pending arbitration is reversed. The case is remanded to that court for further proceedings consistent with this opinion.

*So ordered.*

---

69. *Cobb v. Lewis, supra* note 67, 488 F.2d at 47, quoting *American Safety Equip. Corp. v. J. P. Maguire & Co., supra* note 67, 391 F.2d at 826.

70. *Cobb v. Lewis, supra* note 67, 488 F.2d at 47, quoting *American Safety Equip. Corp. v. J. P. Maguire & Co., supra* note 67, 391 F.2d at 827.

71. *Cobb v. Lewis, supra* note 67, 488 F.2d at 47.

72. *Id.*, quoting *American Safety Equip. Corp. v. J. P. Maguire & Co., supra* note 67, 391 F.2d at 827.

73. See cases cited *supra* note 67.

74. This appeal does not present the question whether in the instant case arbitration proceedings should be stayed pending judicial determination of the antitrust claims. See, e. g., *A. & E. Plastik Pak Co. v. Monsanto Co.*, 396 F.2d 710, 716 (9th Cir. 1974).

75. See generally, *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

The District Court's order refusing to stay proceedings on the common law counts also rested on the belief that arbitration had already been unsuccessfully attempted. *Lee v. Ply*Gem Indus., Inc., supra* note 5, at 1, App. 207. The record reveals, however, that while the franchisees initially pressed for arbitration as provided by the contracts, they voluntarily withdrew their request before arbitration proceedings commenced. App. 183. We are at a loss to perceive why the franchisees' retraction of their demand for arbitration should preclude the Ply*Gem companies from relying on the agreement to arbitrate instead of litigate disputes arising out of the sublicense contracts.