**MAR–LEN OF LOUISIANA, INC.,**
**Plaintiff-Appellee,**

v.

**PARSONS–GILBANE, a Joint Venture,**
**Defendant-Appellant.**

**No. 83–4772**

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

May 21, 1984.

Rehearing En Banc Denied
July 30, 1984.

McGlinchey, Stafford, Mintz & Cellini, Henri Wolbrette, III, Kathleen A. Manning, New Orleans, La., for defendant-appellant.

Allen R. Boudreaux, Thibodaux, La., for plaintiff-appellee.

Before RUBIN, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

On August 5, 1983, Mar-Len of Louisiana, Inc., filed suit against Parsons-Gilbane, seeking reformation or voidance of modifications 022 and 039 to a contract for

the construction of fire and flush water facility at Strategic Petroleum Reserves at the West Hackberry Storage Complex.

On August 16, 1983, Parsons-Gilbane removed the action to the U.S. District Court, Western District of Louisiana. On August 15, 1983, Parsons-Gilbane filed a motion to compel arbitration and to stay the proceedings. On November 30, 1983, the district court denied the motion to stay and to compel arbitration and ordered the trial of the validity of modifications 022 and 039. Parsons-Gilbane has appealed this interlocutory order. The central issue in the suit is whether the written modifications to the contract relating to performance of "extra" work by Mar-Len should be enforced as written or whether those provisions should be reformed because of economic duress which Mar-Len argues motivated it to agree to the modifications.

Mar-Len, relying on *Enelow v. New York Life Insurance Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935) and *Ettelson v. Metropolitan Life Insurance Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942), moves to dismiss the appeal on grounds that the denial of Parsons-Gilbane's motion to stay and to compel arbitration is not appealable under 28 U.S.C. 1292(a)(1) because the order complained of was a ruling on a motion asserting an equitable defense in response to a suit seeking equitable relief.

*Enelow* and *Ettelson* establish the principle that when a party attempts to interpose an equitable defense to a legal cause of action the ruling on that defense is appealable as a grant or denial of an injunction under § 1292(a); but when an equitable defense is interposed to a traditional cause of action in equity, a ruling on the equitable defense is not appealable.

Parsons-Gilbane asserts that a distinction has been established by this court in *La Nacional Platanera, S.C.L. v. North American Fruit & Steamship Corp.*, 84 F.2d 881 (5th Cir.1936) between an order staying the lawsuit under section 3 of the Arbitration Act and order compelling arbitration under section 4 of the Arbitration Act. Parsons-Gilbane argues that section 4 orders are always appealable irrespective of whether the underlying suit is at law or equity.

We disagree with this interpretation of *La Nacional.* In *La Nacional*, the action was at law and therefore the order compelling arbitration was appealable under the teaching of *Enelow* and *Ettelson.*

The first circuit, in *Langley v. Colonial Leasing Co. of New England*, 707 F.2d 1 (1st Cir.1983), addressed this precise issue. In *Langley*, a motion to stay and to compel arbitration was filed in response to a suit filed on a traditional equitable cause of action. The district court denied the motion and an appeal followed. The court of appeals concluded that no distinction should be drawn between section 3 and section 4 orders and that the order was not appealable since the underlying cause of action was equitable.

Since the underlying suit in this case seeks reformation of the contract, the suit is equitable in nature. 5 Moore's Fed.Practice 38.22 (2d Cir.1967), *Standard Chlorine of Delaware, Inc. v. Leonard*, 384 F.2d 304, 308 (2nd Cir.1967). Therefore, under the unambiguous teaching of *Enelow*, the district court's denial of Parsons-Gilbane's motion is not appealable.[1] We therefore lack jurisdiction to hear this appeal and it is DISMISSED.

ALVIN B. RUBIN, Circuit Judge, dissenting:

I respectfully dissent. The merger of law and equity has now been so far com-

---

1. We agree generally with the criticism of the *Enelow-Ettelson* rule which has been characterized as "artificial," "medieval" and "outmoded". *City of Naples v. Prepakt Concrete Co.*, 494 F.2d 511, 512 (5th Cir.1974), *cert. denied*, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974); *Wallace v. Norman Industries, Inc.*, 467 F.2d 824, 827 (5th Cir.1972); and *Glen Oaks Utilities, Inc. v. City of Houston*, 280 F.2d 330, 333 (5th Cir. 1960). The Supreme Court, however, cited *Enelow* and *Ettelson* with approval as recent as 1955 in *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233, and we feel bound to follow the rule until the Supreme Court changes it.

pleted that we should not cast back a half-century to determine whether a suit is inherently equitable or legal and a defense is of the same or a different genre. The doctrine of *Enelow v. New York Life Insurance Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), antedates the adoption of the Federal Rules of Civil Procedure. *Ettelson v. Metropolitan Life Insurance Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942), applied the same precept when the Civil Rules were in their infancy. We have many times noted the extensive criticism of this archaic distinction.[1] So have others.[2]

Criticism of the *Enelow-Ettelson* rule is uniformly coupled with the regretful supposition that it binds appellate courts until Congress or the Supreme Court effects a change.[3] Congress, however, can scarcely be faulted for overlooking "so esoteric a field of appellate jurisdiction."[4] Moreover, three years after the Supreme Court last

considered, and apologetically reaffirmed, the *Enelow-Ettelson* rule,[5] Congress amended 28 U.S.C. § 1292 to allow for interlocutory appeal of an order involving "a controlling question of law as to which there is substantial ground for difference of opinion," the resolution of which "may materially advance the ultimate termination of the litigation."[6] In enacting this rule, Congress clearly signaled its concern that questions of appealability be resolved by considerations of genuine need and merit, not by resort to archaic distinctions between law and equity. Furthermore, in providing a method of weeding out meritless interlocutory appeals, section 1292(b) has undermined the argument that the *Enelow-Ettelson* rule is necessary to "limit appealability of interlocutory orders."[7] In the light of this legislative development, the *Enelow-Ettelson* rule may and should be reconsidered.[8]

1. *See Oasis Oil & Refining Corp. v. Armada Transport and Refining Co.*, 719 F.2d 124, 125 (5th Cir.1983) ("in this day of unitary actions, courts and commentators criticize as artificial the *Enelow-Ettelson* distinction"); *City of Naples v. Prepakt Concrete Co.*, 494 F.2d 511, 512 (5th Cir.1974), *cert. denied*, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974) (*Enelow-Ettelson* doctrine is a "medieval if not Byzantine peculiarit[y]"); *Wallace v. Norman Industries, Inc.*, 467 F.2d 824, 827 (5th Cir.1972) ("it is anomalous that [*Enelow* requires that] the appealability of the order in this case should turn on an outmoded historical distinction"); *Glen Oaks Utilities, Inc. v. City of Houston*, 280 F.2d 330, 333 (5th Cir. 1960) (The *Enelow* rule "was not laid down in the time of Henry IV, but it might be plausibly said that it is a technical procedural distinction which those who framed the Rules of Civil Procedure intended to abolish") (footnote omitted).

2. *See, e.g., Hartford Financial Systems, Inc. v. Florida Software Services, Inc.*, 712 F.2d 724, 727 (1st Cir.1983) (*Enelow* is "a Serbonian bog, where cases whole have sunk from sight"). *See also Mellon Bank v. Pritchard-Keang Nam Corp.*, 651 F.2d 1244, 1247 (8th Cir.1981) ("the *Enelow-Ettelson* rule has been roundly criticized by nearly every court and commentator that has considered its application"); *Goldberg v. Carey*, 601 F.2d 653, 656 (2d Cir.1979) (*Enelow-Ettelson* rule "somewhat artificial"); *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1022 (6th Cir.1979) ("[t]he law on this matter is largely an historical anomaly"); *Lee v. Ply*Gem Industries, Inc.*, 593 F.2d 1266, 1269 (D.C.Cir.), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073

(1979) (rule has been "much maligned as divorced from any rational or coherent appeals policy"); *Chapman v. International Ladies' Garment Workers' Union*, 401 F.2d 626, 628 (4th Cir.1968) ("There is room for dissatisfaction with a rule that tolerates opposite results depending upon the pure fortuity of the race to the courthouse.").

3. *See, e.g., J.M. Huber & Co. v. M/V Plym*, 468 F.2d 166, 167 (4th Cir.1972) ("Were the decisional slate clean we would have no hesitancy in discarding this fictional distinction and upholding appealability, but it would appear that the solution to this 'incongruity' must come from the Congress or upon reconsideration by the Supreme Court.").

4. 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure § 3923, at 64.

5. *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955).

6. Pub.L. No. 85–919, 72 Stat. 1770 (1958), *codified at* 28 U.S.C. § 1292(b) (1976).

7. *Baltimore Contractors v. Bodinger*, 348 U.S. 176, 184, 75 S.Ct. 249, 254, 99 L.Ed. 233 (1955).

8. *See* 16 Wright & Miller, *supra* note 4, § 3923, at 64–65. *Cf. Chappell & Co. v. Frankel*, 367 F.2d 197, 201 (2d Cir.1966) (citing enactment of § 1292(b) as major factor justifying reconsideration and abandonment of prior rule allowing

To await reconsideration by the Supreme Court would only further extend the delay and confusion occasioned by the rule, perhaps indefinitely. As Professor Edward Cooper had observed,

"Reliance on the Supreme Court [to change the rule] requires that the Court make room in a docket crowded with vitally important issues to resolve an issue of appellate jurisdiction that can fairly be described as picayune. Two decades of experience with the established rule in the courts of appeals should provide sufficient justification for establishing a new rule in an area that is within their own special knowledge and responsibility." [9]

In the five decades since *Enelow* was decided, experience with the rule has served only to make its defects more obvious. Seven years ago, Judge MacKinnon of the District of Columbia Circuit expressed the hope that the *Enelow-Ettelson* rule "will not continue to cast its antiquated shadow of an equity-versus-law test upon modern interlocutory appellate practice. The demise of that rule cannot be far away." [10] Because the Supreme Court has not yet had occasion to put an end to the rule's unhappy life, we should undertake the task.

The appealability of orders should be governed by their practical effect, rather than by their form.[11] Applying *Enelow* to this situation contravenes the federal policy that favors arbitration as a means of dispute resolution. *See also Southland Corp. v. Keating,* —— U.S. ——, 104 S.Ct. 852, 854–55, 79 L.Ed.2d 1 (1984). The First Circuit chose to cling to quaint doctrine in *Langley v. Colonial Leasing Co. of New England,* 707 F.2d 1 (1st Cir.1983). I would clean our procedural closet of those

equitable cobwebs, for, in this instance, remembering history dooms us to repeat its errors.

---

interlocutory appeal of an order denying plaintiff's motion for summary judgment in action seeking permanent injunctive relief; "the enactment of the Interlocutory Appeals Act of 1958 would seem to be the sort of 'intervening development in the law,' ... that frequently justifies a court's reconsideration of its prior rulings, for that Act, which allows interlocutory appeal is most persuasive removes [sic] much of the initial justification for our earlier decisions.").

9. 16 Wright & Miller, *supra* note 4, at § 3923, at 65.

10. *Hussain v. Bache & Co.,* 562 F.2d 1287, 1291 (D.C.Cir.1977).

11. *See, e.g., Gray Line Motor Tours, Inc. v. City of New Orleans,* 498 F.2d 293, 296 (5th Cir. 1974). *See generally* 16 Wright & Miller, *supra* note 4, § 3923.