**MELLON BANK, N. A., a national banking association, Appellant,**

**International Systems & Controls Corporation, a corporation**

v.

**PRITCHARD–KEANG NAM CORPORATION, Delaware, a corporation; and the Pritchard Corporation, a corporation; and Robert D. Schaff, Appellees.**

**Mellon Bank, N.A., a national banking association**

**INTERNATIONAL SYSTEMS & CONTROLS CORPORATION, a corporation, Appellant,**

v.

**PRITCHARD–KEANG NAM CORPORATION, Delaware, a corporation; and the Pritchard Corporation, a corporation; and Robert D. Schaff, Appellees.**

**Nos. 80–1967, 80–1973.**

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1981.

Decided June 1, 1981.

---

Lawrence R. Brown and W. Perry Brandt, Stinson, Mag & Fizzel, Kansas City, Mo., J. Tomlinson Fort and Paul M. Singer, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellant Mellon Bank, N. A.

Hillix, Brewer, Hoffhaus & Whittaker by Kent E. Whittaker and Mark G. Flaherty, Kansas City, Mo., for Intern. Systems & Controls Corp.

Hughes, Hubbard & Reed, Norbert A. Schlei, William T. Bisset, John J. Kralik, IV, Los Angeles, Cal., for Pritchard-Keang Nam Corp.

Gage & Tucker, William L. Turner and George P. Coughlin, Kansas City, Mo., for appellees.

Before HEANEY and HENLEY, Circuit Judges, and PECK,* Senior Circuit Judge.

---

* John W. Peck, U. S. Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

HEANEY, Circuit Judge.

This matter is before the Court on appeal from an order of the United States District Court for the Western District of Missouri[1] granting a motion to stay further district court proceedings pending arbitration of disputes between two of the parties. Because we conclude that we currently lack jurisdiction over the issues raised, we dismiss the appeal.

## I

In July of 1978, appellant International Systems & Controls Corporation (ISC) entered into a written agreement with Keang-Nam Enterprises, Ltd., a Korean corporation, under which ISC sold the assets of two of its subsidiaries—J. F. Pritchard & Company (JFP) and Pritchard International Corporation (PIC)—to appellee Pritchard-Keang Nam Corporation (PKN). PKN is a Delaware subsidiary of Keang-Nam Enterprises, Ltd., incorporated for the purpose of receiving the rights to the agreement. The agreement contained a clause requiring arbitration of "[a]ny controversy, dispute or claim arising out of, or relating to, this Agreement." PKN supplied part of the purchase price for the sale by assuming $2 million in promissory notes which had been executed by JFP and were payable to ISC. Eight separate notes of $250,000 each were involved, with maturity dates from October of 1979 to October of 1983. JFP had secured these notes in part by pledging 45,014 shares of stock issued by the Atlantic, Gulf and Pacific Company of Manila, Inc. (AG&P), which were part of JFP's assets. ISC, in turn, had pledged the AG&P stock to appellant Mellon Bank as security for debts owed to Mellon Bank by ISC.

In January of 1979, PKN expressed a desire to sell the AG&P stock, but ISC and its assignee Mellon Bank refused to release the stock unless PKN agreed to prepay $500,000 on the sixth and seventh JFP notes. Consequently, PKN executed a "Pledge Agreement" on February 27, 1979, in which PKN promised to pay Mellon Bank

$500,000 following the release of the AG&P stock and its subsequent sale.

On August 28, 1979, Mellon Bank filed a complaint in which it alleged that although the stock certificates were released in accordance with the Pledge Agreement, PKN failed to remit the $500,000. Mellon Bank sought specific performance of the Pledge Agreement—restitution of the AG&P stock and damages, both actual and punitive. On October 15, 1979, PKN filed its answer, asserting as an affirmative defense that Mellon Bank's claims must first be submitted to arbitration pursuant to the original agreement. It also filed a counterclaim against Mellon Bank and against ISC as a third-party defendant, alleging that part of the assets transferred in the original sale—an account receivable allegedly owed to PIC by an Algerian oil company—was worthless. PKN charged that the receivable had been obtained through fraud, bribery and other violations of Algerian law and that ISC made false and fraudulent representations to PKN concerning it. PKN sought partial rescission of the original agreement insofar as it concerned the Algerian receivable, imposition of a constructive trust on that portion of the purchase price attributable to the receivable, damages for fraud and breach of contract, and a declaratory judgment that the Pledge Agreement was unenforceable. ISC counterclaimed against PKN, asserting substantially the same claims as Mellon Bank.

On August 23, 1979, five days prior to the filing of Mellon Bank's initial complaint, PKN sent to both ISC and Mellon Bank a "Pre-Arbitration Notice of Claim" required by the arbitration provision of the original agreement. On October 15, 1979, PKN formerly demanded arbitration of all matters and disputes described in its counterclaim and, in its counterclaim, specifically requested a stay of all proceedings pending completion of arbitration. In February of 1980, ISC moved to stay district court proceedings pending arbitration. PKN op-

---

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

posed this motion and proceeded with discovery. At the end of March, ISC moved to withdraw its request for a stay. In June, the district court directed PKN to clarify its position concerning a stay, and on July 9, 1980, PKN moved to stay all district court proceedings pending the conclusion of arbitration. On July 25, ISC moved to stay the arbitration proceedings. In an order dated September 11, 1980, the district court granted PKN's motion to stay further proceedings in the district court. Mellon Bank and ISC bring this appeal from that order, claiming, *inter alia*, that PKN waived its right to arbitration.[2]

## II

PKN asserts that this Court lacks jurisdiction over the appeal because the district court decision is not a final order appealable under 28 U.S.C. § 1291 nor is it an order granting or denying an injunction appealable under § 1292(a)(1). Neither Mellon Bank nor ISC contend that § 1291 should apply to this case. Mellon Bank argues, however, that Judge Clark's order staying district court proceedings pending the conclusion of arbitration should be considered a grant of an injunction appealable under § 1292(a)(1). ISC maintains that the district court order should be considered a denial of its request for a stay of the arbitration proceedings appealable under the same section. We agree with neither contention.

The determination of whether a district court stay order is to be considered appealable as an injunction is far from simple. The blame for the complication can be traced back to the time when law courts and equity courts were separate entities. Although in the federal judicial system the distinction is now long dead, this case demonstrates that its specter continues to haunt the modern court attempting to discern the murky bounds of appellate jurisdiction.

■ An order prohibiting a party from pursuing litigation in another court is un-questionably an injunction for purposes of interlocutory appeal. *See, e. g., United States v. Dorgan*, 522 F.2d 969, 971 n.1 (8th Cir. 1975). Prior to the complete merger of law and equity, therefore, an order from the Chancellor staying proceedings in a law court was considered an appealable injunction. *See Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382–383, 55 S.Ct. 310, 311, 79 L.Ed. 440 (1935). Following the adoption of the Federal Rules of Civil Procedure and the merger of law and equity, the Supreme Court chose to continue reasoning by historical analogy and reaffirmed the rule that an equitable order restraining a legal action is appealable as an injunction. *Ettelson v. Metropolitan Life Ins. Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). In more recent pronouncements, a number of courts have held that the *Enelow-Ettelson* rule operates to permit appeal from a district court's stay of its own proceedings, provided "(1) the original cause of action could have been maintained only at law in the days preceding the single form of action, and (2) the stay is sought to permit the interposition of an equitable defense." *USM Corp. v. GKN Fasteners, Ltd.*, 574 F.2d 17, 21 (1st Cir. 1978); *see Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 182–185, 75 S.Ct. 249, 253–254, 99 L.Ed. 233 (1955); *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1022–1023 (6th Cir. 1979); *Hussain v. Bache & Co.*, 562 F.2d 1287, 1288–1289 (D.C.Cir.1977); *Thompson v. House of Nine, Inc.*, 482 F.2d 888, 890 (5th Cir. 1973); *Standard Chlorine of Del., Inc. v. Leonard*, 384 F.2d 304, 308 (2d Cir. 1967). *See generally* C. Wright & A. Miller, Federal Practice and Procedure, § 3923 (1977). Although the *Enelow-Ettelson* rule has been roundly criticized by nearly every court and commentator that has considered its application,[3] it remains an established principle of federal appellate jurisdiction.

Because the interposition of an arbitration agreement is clearly an equitable defense, *see Shanferoke Coal & Supply Corp.*

---

2. Counsel for PKN informed us at oral argument that the arbitration proceedings were in progress and that the evidentiary hearings on the dispute had taken twenty-two days.

3. *See, e. g., Hussain v. Bache & Co.*, 562 F.2d 1287, 1289 & nn.1, 2 & 3 (D.C.Cir.1977); authorities cited in Comment, 1973 U.Ill.L.F. 338, 342 n.25.

v. *Westchester Serv. Corp.*, 293 U.S. 449, 452, 55 S.Ct. 313, 314, 79 L.Ed. 583 (1935), the second requirement of the *Enelow-Ettelson* formula is satisfied in this case. Accordingly, our concern is with the first part of the test—whether Mellon Bank's original claim or ISC's counterclaim would have been considered legal or equitable in nature prior to the establishment of the single form of action.

Mellon Bank's complaint alleges five separate causes of action. The final four counts are clearly legal in nature, seeking damages for breach of contract, false statements, conspiracy to defraud and conversion. The first count, however, seeks specific performance of the Pledge Agreement, asking the court to order PKN to remit $500,000 as it had agreed or, in the alternative, to return the AG&P stock. This prayer for specific performance is plainly equitable in nature.[4] *See Standard Chlorine of Del., Inc. v. Leonard, supra,* 384 F.2d at 308. Similarly, ISC's counterclaim seeks recovery of the AG&P stock as well as compensatory and punitive damages.

We are thus presented with complaints seeking both equitable and legal relief. In such situations, courts have had considerable difficulty in determining whether the claim should be deemed legal or equitable for purposes of applying the *Enelow-Ettelson* rule. Some courts have attempted to discern the predominant nature of the entire claim. *See Mansbach v. Prescott, Ball & Turben, supra,* 598 F.2d at 1023 ("predominant nature"); *Excavation Constr., Inc. v. Carpenters' District Council,* 519 F.2d 814, 814 (4th Cir. 1975) ("principally and substantially"); *Brannon v. Warn Bros., Inc.,* 508 F.2d 115, 119 (9th Cir. 1974) ("basically and predominantly"). Other courts have looked to see if one form of relief requested is "merely incidental" or "plainly subordinate" to relief sought in the

other form. *See Diematic Mfg. Corp. v. Packaging Indus., Inc.,* 516 F.2d 975, 978–979 (2d Cir.), *cert. denied,* 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975); *Thompson v. House of Nine, Inc., supra,* 482 F.2d at 890; *New England Power Co. v. Asiatic Petroleum Corp.,* 456 F.2d 183, 188 (1st Cir. 1972); *Standard Chlorine of Del., Inc. v. Leonard, supra,* 384 F.2d at 309; *Alexander v. Pacific Maritime Ass'n,* 332 F.2d 266, 268 (9th Cir.), *cert. denied,* 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964). Still others have presumed that mixed claims are to be treated as equitable unless the equitable relief sought is "incidental" or "clearly subordinate" to the legal claims. *See Lee v. Ply\*Gem Indus., Inc.,* 593 F.2d 1266, 1269 (D.C.Cir.), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); *USM Corp. v. GKN Fasteners, Ltd., supra,* 574 F.2d at 22; *Hussain v. Bache & Co., supra,* 562 F.2d at 1290. Alternatively stated, "any fair doubt about the character of the action is to be resolved 'against the claim that the action is predominantly one at law.'" *United States v. American Inst. of Real Estate Appraisers,* 590 F.2d 242, 245 (7th Cir. 1978) (quoting *Schine v. Schine,* 367 F.2d 685, 688 (2d Cir. 1966) (Friendly, J., concurring)). *Cf. Danford v. Schwabacher,* 488 F.2d 454, 457 (9th Cir. 1973) (mixed action deemed equitable if "it cannot fairly be said that either the legal or the equitable aspects predominate").

■ In our view, sound policy and practice mandate that the *Enelow-Ettelson* rule be used to permit appeals in only a narrow set of circumstances. It is instructive to note that when the Supreme Court affirmed the *Enelow-Ettelson* rule in *Baltimore Contractors, Inc. v. Bodinger, supra,* it dismissed the appeal with the following comment:

4. Mellon Bank argues that, although its complaint asks for specific performance, it is really only seeking to force PKN to fulfill its promise to pay $500,000. The Pledge Agreement provided, however, that PKN would either pay ISC $500,000 or return the AG&P stock. Thus, a prayer for specific performance involves more than a simple request for the payment of money; it includes a request for the transfer of securities—an equitable remedy. At oral argument, counsel for Mellon Bank expressly recognized this when he stated, "The four legal counts would have been maintained at law. The specific performance count would have been at equity * * *."

The reliance on the analogy of equity power to enjoin proceedings in other courts has elements of fiction in this day of one form of action. * * * The distinction has been applied for years, however, and we conclude that *it is better judicial practice to follow the precedents which limit appealability of interlocutory orders,* leaving Congress to make such amendments as it may find proper.

*Id.* at 184–185 (emphasis added).

If the *Enelow-Ettelson* rule must be applied to this case, it should be applied with an eye toward a finding of nonappealability. There is a strong federal policy against piecemeal appeals. *See Switzerland Cheese Ass'n v. E. Horne's Market, Inc.,* 385 U.S. 23, 24, 87 S.Ct. 193, 194, 17 L.Ed.2d 23 (1966); *In re World Tradeways Shipping, Ltd.,* 373 F.2d 860, 862 (2d Cir.), *cert. denied,* 389 U.S. 901, 88 S.Ct. 228, 19 L.Ed.2d 224 (1967). This policy has found expression in 28 U.S.C. § 1291, which grants appellate jurisdiction only in cases in which *final* decisions have been rendered by the district courts. *See USM Corp. v. GKN Fasteners, Ltd., supra,* 574 F.2d at 19. Although Congress provided exceptions to the finality requirement in 28 U.S.C. § 1292, the exception contained in § 1292(a)(1) "is a narrow one and is keyed to the 'need to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequences.'" *Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978) (quoting *Baltimore Contractors v. Bodinger, supra,* 348 U.S. at 181, 75 S.Ct. at 252).

A second reason to carefully scrutinize the proffered grounds for appellate jurisdiction is that arbitration agreements, freely bargained for, are a favored means of resolving contractual disputes. "The policy of the Federal Arbitration Act is to promote arbitration to accord with the intention of the parties and to ease court congestion. All doubts are to be resolved in favor of arbitration. Whenever possible, the courts will use the Federal Arbitration Act to en-

force agreements to arbitrate." *Galt v. Libbey-Owens-Ford Glass Company,* 376 F.2d 711, 714 (7th Cir. 1967) (citations omitted); *see USM Corp. v. GKN Fasteners, Ltd., supra,* 574 F.2d at 20. "[F]ederal law is to be implemented in such a way as to make the arbitration effective and not to erect technical and unsubstantial barriers such as were the mode in the early days when arbitration was viewed by many courts with suspicion and hostility." *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1068 (2d Cir. 1972). Although we recognize that this policy could as well be fostered by accepting jurisdiction and finding in favor of arbitration on the merits, we think it better to carefully examine the basis for jurisdiction on appeal. In that way, we afford parties to arbitration agreements fewer opportunities to delay or forestall arbitration proceedings, thus ensuring that arbitration remains a rapid and efficient means to resolve disputes.

Moreover, we note that limiting interlocutory appeals of right does not leave a complaining party with no recourse. In cases of serious dispute, the district court may certify the question for discretionary appeal under 28 U.S.C. § 1292(b). In exceptional circumstances, a writ of prohibition or mandamus may be issued to protect the party's interests. *See Aaacon Auto Transport v. Ninfo,* 490 F.2d 83, 84 (2d Cir. 1974); *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 86–87 (2d Cir. 1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). Furthermore, if a decision to stay district court proceedings or deny a stay of arbitration has a prejudicial effect on the rights of a party, that decision may be appealed after a final order has issued. *See Schine v. Schine, supra,* 367 F.2d at 688.

■ These principles lead us to conclude that, for purposes of applying the *Enelow-Ettelson* rule, a complaint praying for a mix of equitable and legal relief shall be deemed equitable, unless the equitable claim is so insubstantial as to be considered frivolous.[5]

5. We note that the Supreme Court has reversed this presumption when the constitutional right to a jury trial is in question. *See Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). We are not presented with that constitutional issue in this case.

As the Court of Appeals for the District of Columbia Circuit recently observed,

> This pattern of letting any serious and independent equity element color the entire action is itself in keeping with the ancient equity practice that the Chancellor could effect all necessary relief, including legal relief, as long as the case was properly before him on a non-frivolous equitable ground, for "equity delights to do justice, and that not by halves."

*Hussain v. Bache & Co., supra*, 562 F.2d at 1290 (quoting 1 Pomeroy's Equity Jurisprudence § 181 (5th ed. S. Symons 1941)). Thus, not only does this test comport with the policies against piecemeal appeals and in favor of arbitration, it is consistent with established principles of equity jurisprudence.

■ Applying this formulation to this case, we conclude that the complaints involved should be deemed equitable. Both Mellon Bank's complaint and ISC's counterclaim requested equitable relief in the form of restitution of the AG&P stock. The complaints express no preference between the legal and equitable remedies sought, and we have no reason to find that the equitable claims are frivolous. *See Hussain v. Bache & Co., supra*, 562 F.2d at 1292 (McGowan, J., concurring).

■ ISC argues that, regardless of the strictures of the *Enelow-Ettelson* rule, the district court's order is appealable under 28 U.S.C. § 1292(a)(1) as a denial of a requested injunction against the arbitration proceedings. While we recognize that this position has some support in the Sixth Circuit and the Ninth Circuit, *see Buffler v. Electronic Computer Programming Inst., Inc.*, 466 F.2d 694, 696–699 (6th Cir. 1972); *Power Replacement, Inc. v. Air Preheater Co.*, 426 F.2d 980 (9th Cir. 1970), we think that, for the policy reasons stated earlier in this opinion, a finding of nonappealability is warranted. Accordingly, we follow the lead of the First, Second and Third Circuits and hold that an order denying a stay of arbitration proceedings is not an interlocutory order appealable under 28 U.S.C. § 1292(a)(1).[6] *See Stateside Machinery Co. v. Alperin*, 526 F.2d 480, 482–484 (3d Cir. 1975); *New England Power Co. v. Asiatic Petroleum Corp., supra*, 456 F.2d at 185–187; *Greater Continental Corp. v. Schechter*, 422 F.2d 1100, 1102–1103 (2d Cir. 1970).[7]

PKN asks this Court to award its "expenses, including reasonable attorneys' fees, incurred in defending appellants' frivolous and premature appeals." That request is denied.

Appeal dismissed.

---

**6.** We need not consider whether we would reach a different conclusion in situations involving interlocutory appeals from orders granting stays of arbitration. *See Buffler v. Electronic Computer Programming Inst., Inc.*, 466 F.2d 694, 699 (6th Cir. 1972).

**7.** ISC also argues that the rule announced in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), requires a finding of appealability. ISC asserts that, since its amended counterclaim included claims under the federal securities laws, it cannot be forced to defer prosecution of those claims pending arbitration.

We reject this contention because ISC's counterclaim, as it currently stands, contains no allegations of securities law violations.

ISC's original answer contained no counterclaim. When the district court granted PKN's motion for stay on September 11, 1980, however, it also granted ISC's motion to amend its answer to assert a counterclaim. The counterclaim was filed on September 23, 1980, but it included no claims under the securities laws. Over one month later, on October 28, ISC filed an amended counterclaim which included securities law claims. On November 18, 1980, the district court issued an order in which it determined that its September 11 stay order prohibited all further court proceedings, except the September 23 filing of the counterclaim; ISC's third attempt to amend its answer, therefore, was of no effect. The district court did not abuse its discretion in so ruling.