832 F.2d 470
 56 USLW 2306, 1987-2 Trade Cases 67,743
 In re HOPS ANTITRUST LITIGATION (Four Cases).
ANHEUSER-BUSCH, INC., Appellee,
v.
John I. HAAS, GmbH; Joh. Barth & Sohn; Horst Co.;
Sebastian Klotz; Fromm, Mayer-Bass, GmbH, Appellant.
L. Oppenheimer & Co., Inc.
ANHEUSER-BUSCH, INC., Appellee,
v.
John I. HAAS, GmbH; Joh. Barth & Sohn; Appellants.
Horst Co.; Sebastian Klotz; Fromm, Mayer-Bass, GmbH; L.
Oppenheimer & Co., Inc.,
ANHEUSER-BUSCH, INC., Appellee,
v.
John I. HAAS, GmbH; Joh. Barth & Sohn; Horst Co.;
Sebastian Klotz; Appellants.
Fromm, Mayer-Bass, GmbH; L. Oppenheimer & Co., Inc.
ANHEUSER-BUSCH, INC., Appellant,
v.
John I. HAAS, GmbH; Joh. Barth & Sohn; Horst Co.;
Sebastian Klotz; Fromm, Mayer-Bass, GmbH, Appellees.
L. Oppenheimer & Co., Inc.
 Nos. 87-1327 and 87-1378 to 87-1380.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 22, 1987.
Decided Oct. 28, 1987.
 
 Sutton Keany, New York City, for Fromm and Mayer.
 Paul E. Summit, New York City, for Horst and Klotz.
 Rebuttal was by Merrill G. Davidoff, Philadelphia, Pa., for Haas.
 Scott E. Flick, Washington, D.C., for Anheuser-Busch.
 Before McMILLIAN, FAGG and MAGILL, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Fromm, Mayer-Bass, GmbH (appeal No. 87-1327), John I. Haas, GmbH, and Joh. Barth & Sohn (appeal No. 87-1378), Horst Co. and Sebastian Klotz (appeal No. 87-1379), appeal from an order entered in the United States District Court[1] for the Eastern District of Missouri granting in part and denying in part their motions to compel arbitration and denying their motions to stay district court proceedings pending arbitration. In re Hops Antitrust Litigation, 655 F.Supp. 169 (E.D.Mo.1987) (order). Anheuser-Busch, Inc. (AB), filed a motion to dismiss these appeals for lack of appellate jurisdiction and a cross-appeal (appeal No. 87-1380). For the reasons discussed below, we dismiss these appeals for lack of jurisdiction.
 
 FACTS
 
 2
 AB, a Missouri corporation, is a major United States brewer. AB purchases hops, hops products, such as pellets and extracts, and various services involving the handling, processing and storage of hops from hops dealers and merchants in the United States and in Europe. Hops are agricultural products used almost exclusively to add flavor and aroma to beer, ale and similar alcoholic beverages. Appellants are hops merchants located in the Federal Republic of Germany who sell foreign and domestic hops, hops products and hops services to AB. From approximately 1969 until December 1982, the parties' hops contracts did not include arbitration or choice of law clauses. However, after December 1982, each hops contract contained an arbitration clause which provided in part that "any dispute arising out of or relating to this agreement, including its interpretation, validity, scope and enforceability, shall be resolved exclusively and finally by arbitration" in Munich, West Germany, to be conducted in English before three arbitrators, pursuant to the Rules of Conciliation and Arbitration of the International Chamber of Commerce, and a choice of law clause specifying that the "[a]greement shall be governed and construed in accordance with the laws of the Federal Republic of Germany."
 
 
 3
 Following the settlement by consent decree of an action brought by the United States charging several United States and European hops merchants with conspiring to fix hops prices, United States v. John Barth, Inc., 1985-2 Trade Cas. (CCH) p 66,740 (E.D.Wash. Aug. 5, 1985), AB filed a complaint in February 1986 alleging that certain hops merchants based in the United States had conspired since 1976 to fix the prices and price ranges of foreign and domestic hops, hops products and hops services in violation of Sec. 1 et seq. of the Sherman Act, 15 U.S.C. Sec. 1 et seq. Anheuser-Busch, Inc. v. John Barth, Inc., No. 86-0420C(3) (E.D.Mo.). Then, in August 1986, AB filed the complaint at issue in these appeals against appellants, alleging a similar price-fixing conspiracy, dating from 1976 to sometime in 1984, and seeking damages, equitable relief and costs, pursuant to Secs. 4, 16 of the Clayton Act, 15 U.S.C. Secs. 15, 26. AB's antitrust actions and similar actions filed by other major United States brewers were consolidated for pre-trial proceedings by the Judicial Panel on Multi-District Litigation. In re Hops Antitrust Litigation, MDL No. 706 (J.P.M.D.L. Dec. 5, 1986).[2]
 
 
 4
 In January 1987 appellants filed motions to dismiss or, alternatively, to compel arbitration of AB's antitrust claims and to stay further district court proceedings pending arbitration. Federal Arbitration Act, 9 U.S.C. Secs. 3, 4; Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. No. 6997, reprinted at 9 U.S.C.A. Sec. 201 note (West Supp.1987). The district court held a hearing on the motions in early February 1987. Even though only the post-December 1982 hops contracts contain arbitration clauses, appellants argued that the pre-December 1982 hops contracts should also be subject to arbitration because (1) the pre- and post-December 1982 hops contracts involved the same pricing practices, (2) the parties intended to submit pre-December 1982 hops contracts to arbitration because some of the pre-December 1982 hops contracts had been "redocumented" to include arbitration clauses, and (3) the broad language of the arbitration clauses in the post-December 1982 hops contracts requiring arbitration of any disputes "arising out of or relating to" those contracts also covers the pricing practices in dispute in the pre-December 1982 hops contracts.
 
 
 5
 The district court found that the post-December 1982 hops contracts were valid and that the arbitration clauses contained therein should be enforced and, accordingly, dismissed AB's antitrust claims relating to the post-December 1982 hops contracts and granted appellants' motions to compel arbitration of those claims. In re Hops Antitrust Litigation, 655 F.Supp. 169, 172-73 (E.D.Mo.1987) (memorandum), citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628-39, 105 S.Ct. 3346, 3355-61, 87 L.Ed.2d 444 (1985). The district court further found that each hops contract involved a discrete commercial transaction and that redocumentation of some pre-December 1982 hops contracts to include arbitration clauses did not establish that the parties had agreed to arbitrate disputes relating to all the hops contracts. Memorandum at 8. Accordingly, the district court denied the motions to dismiss or compel arbitration of AB's antitrust claims relating to the pre-December 1982 hops contracts and denied the motions to stay further district court proceedings pending arbitration. Id. at 10. These appeals followed. AB also filed a motion to dismiss and a cross-appeal.[3]
 
 
 6
 On April 28, 1987, this court heard oral arguments by telephone conference call on AB's motion to dismiss these appeals for lack of jurisdiction. We decided that summary disposition of the motion to dismiss was not appropriate under the circumstances and consolidated the motion to dismiss with an expedited hearing of the appeals on the merits. In re Hops Antitrust Litigation, Nos. 87-1327, 87-1378, 87-1379, 87-1380 (8th Cir. Apr. 29, 1987) (order). The parties filed supplementary briefs on the issue of appellate jurisdiction, and oral argument on the issue of appellate jurisdiction and on the merits was heard on June 22, 1987.
 
 APPELLATE JURISDICTION
 
 7
 AB argues that this court lacks jurisdiction over these appeals because the district court order is not a final order or a final collateral order appealable under 28 U.S.C. Sec. 1291, see Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and has not been certified for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(a)(2). AB further argues that because its antitrust complaint must be deemed to be equitable for purposes of the Enelow-Ettelson rule, the district court order is not appealable as an order granting or denying an injunction under 28 U.S.C. Sec. 1292(a)(1). Appellants do not argue that Sec. 1291 applies to these appeals. Appellants do argue, however, that the district court order is appealable under Sec. 1292(a)(1) and the Enelow-Ettelson rule because AB's antitrust complaint is an action for damages. For the reasons discussed below, we reject appellants' arguments.
 
 
 8
 The district court order is not a final order appealable under Sec. 1291 because other matters remain pending in the district court, specifically, the trial of AB's antitrust claims involving the pre-December 1982 hops contracts. The district court order cannot be a final collateral order because it is not effectively unreviewable on appeal. See, e.g., Pioneer Properties, Inc. v. Martin, 776 F.2d 888, 891 (10th Cir.1985). Cf. Stringfellow v. Concerned Neighbors in Action, --- U.S. ----, 107 S.Ct. 1177, 1182-83, 94 L.Ed.2d 389 (1987) (intervenor can appeal after adverse final judgment). Nor are orders granting or denying a motion to compel arbitration, at least in the absence of a stay, considered appealable as injunctions under Sec. 1292(a)(1). Cf. Surman v. Merrill Lynch, Pierce, Fenner & Smith, 733 F.2d 59, 61 (8th Cir.1984) (denial of motion to compel arbitration of pendent state claims and to stay arbitration pending judicial resolution of federal and state securities law claims).[4] "Despite its resemblance to a mandatory injunction, an order to arbitrate is assimilated rather to a procedural order, such as a discovery order. Hence making or refusing to make such an order is not appealable under section 1292(a)(1)." Matterhorn, Inc. v. NCR Corp., 763 F.2d 866, 870 (7th Cir.1985); see, e.g., Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 84-85 (2d Cir.1961) (Friendly, J.), cert. denied, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). But cf. Langley v. Colonial Leasing Co., 707 F.2d 1, 5 (1st Cir.1983) (holding arbitration order is an injunction for purposes of Enelow-Ettelson rule).
 
 
 9
 Therefore, we consider whether we have jurisdiction under the Enelow-Ettelson rule. Despite nearly unanimous judicial and scholarly criticism, the Enelow-Ettelson rule is an established principle of federal appellate jurisdiction. See, e.g., Mellon Bank v. Pritchard-Keang Nam Corp., 651 F.2d 1244, 1247 (8th Cir.1981) (Mellon Bank ); see also Matterhorn, Inc. v. NCR Corp., 763 F.2d at 871 (Posner, J.) (criticism of the rule);[5] Mar-Len of Louisiana, Inc. v. Parsons-Gilbane, 732 F.2d 444, 445-47 (5th Cir.1984) (Rubin, J., dissenting) (criticism of the rule); 9 Moore's Federal Practice p 110.20, at 245 (2d ed. 1985); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure Sec. 3923, at 53-65 & n. 14 (1977 & Supp.1986) (citing cases) (Wright & Miller). Under the Enelow-Ettelson rule, "the grant or denial of a stay of the district court's proceedings is appealable under 28 U.S.C. Sec. 1292(a)(1) as a preliminary injunction, if the original action is a suit at law and the stay is sought to interpose an equitable defense." Gans v. Merrill Lynch Futures, Inc., 814 F.2d 493, 495 (8th Cir.1987).
 
 
 10
 Because arbitration is considered an equitable defense, see Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 452, 55 S.Ct. 313, 314, 79 L.Ed. 583 (1935), the second part of the Enelow-Ettelson rule has been met in this case.
 
 
 11
 What is disputed in this case is the first part of the rule--whether AB's antitrust complaint would have been considered legal or equitable in nature before the merger of law and equity. Characterization of the complaint is by no means an easy task. See generally 16 Wright & Miller Sec. 3923, at 61 (identification of legal or equitable nature of action described as "exasperatingly difficult"). The Mellon Bank court examined the various approaches followed in other circuits and concluded that "the Enelow-Ettelson rule [should] be used to permit appeals in only a narrow set of circumstances." 651 F.2d at 1248. We held that "for purposes of applying the Enelow-Ettelson rule, a complaint praying for a mix of equitable and legal relief shall be deemed equitable, unless the equitable claim is so insubstantial as to be considered frivolous." Id. at 1249 (footnote omitted).
 
 
 12
 The Mellon Bank rule controls the characterization of the complaint in this case. We conclude that, for purposes of applying the Enelow-Ettelson rule, AB's antitrust complaint should be deemed to be equitable. AB's complaint requested legal relief in the form of antitrust damages and equitable relief in the form of a permanent injunction prohibiting future price-fixing, as well as "other, further and different relief as the case may require." In the memoranda filed in support of its motion to dismiss these appeals, AB asserted that because some of the hops contracts involve future crop years and have yet to be performed, the "other, further and different relief" requested in its complaint could include equitable relief in the form of reformation of any unperformed hops contracts to eliminate any overcharges due to price-fixing. On this record we have no reason to believe that AB's claims for equitable relief are frivolous.
 
 
 13
 Accordingly, we dismiss these appeals for lack of jurisdiction. We express no opinion on the merits of the district court order.
 
 
 14
 FAGG, Circuit Judge, dissenting.
 
 
 15
 The court has concluded the district court's order is not appealable either as an order granting or denying an injunction under 28 U.S.C. Sec. 1292(a)(1) or as a final collateral order under 28 U.S.C. Sec. 1291. I disagree and thus respectfully dissent.
 
 
 16
 I have no argument with the court's statement of the general principles of Enelow-Ettelson, and the court correctly notes the single issue is "whether AB's antitrust complaint would have been considered legal or equitable in nature before the merger of law and equity." Ante at 473. For purposes of determining whether the underlying lawsuit the hops merchants seek to stay pending arbitration is a legal action, the court focuses on our opinion in Mellon Bank, N.A. v. Pritchard-Keang Nam Corp., 651 F.2d 1244 (8th Cir.1981) (Mellon Bank ). There is no question we are bound by that opinion to the extent it applies; however, I believe the court has misapplied Mellon Bank.
 
 
 17
 In Mellon Bank the court was faced with complaints made up of multiple, separate causes of action, each one distinctly legal or equitable in nature. See id. at 1246, 1248. The court determined one of those separate causes of action was wholly equitable and not frivolous, thus taking the complaints outside section 1292(a)(1) appellate jurisdiction. Id. at 1249-50. Thus, when a complaint contains separate causes of action each seeking a distinctly legal or equitable remedy, the analysis in Mellon Bank directs our characterization of the suit for purposes of Enelow-Ettelson.
 
 
 18
 Mellon Bank did not, however, address the situation before the court in this case in which the Enelow-Ettelson analysis hinges on our characterization of a cause of action that alone prays for a mix of legal and equitable relief. AB's complaint is composed of a single cause of action that seeks primarily legal relief in the form of damages and also seeks future injunctive relief from continuing misconduct. See ante at 474.
 
 
 19
 When an internally-mixed cause of action is involved, Mellon Bank does not control our Enelow-Ettelson analysis; instead we must "discern the predominant nature" of the mixed cause of action. Mellon Bank, 651 F.2d at 1248. In light of the historical treatment of antitrust suits as actions of law, see Fleitmann v. Welsbach St. Lighting Co., 240 U.S. 27, 29, 36 S.Ct. 233, 234, 60 L.Ed. 505 (1916), the predominantly legal nature of AB's mixed cause of action, and the fact that AB asserts an entitlement to equitable relief only incidental to its claim for antitrust damages, I believe Mellon Bank leaves us free to apply the Enelow-Ettelson rule and take jurisdiction over these appeals under section 1292(a)(1).
 
 
 20
 It is of no consequence that the hops merchants "do not argue that Sec. 1291 applies to these appeals." Ante at 472. If there is a proper jurisdictional base we should not reject these appeals. I believe we also have jurisdiction of these appeals as appeals from a final collateral order. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949).
 
 
 21
 Cohen establishes a three-part test defining the small class of interlocutory orders that ought to be appealable. To be appealable the order must (1) conclusively determine (2) an important issue separate from the merits and (3) be effectively unreviewable on appeal. See Coopers & Lybrand, 437 U.S. at 468, 98 S.Ct. at 2457. The first two conditions of Cohen's three-part test are clearly met in this case. The order of the district court conclusively determines the collateral issue of arbitrability and resolves an important issue independent of the merits of the antitrust suit. The court, however, finds the order cannot be a collateral final order because it is "not effectively unreviewable on appeal." Ante at 472. In my view the order does meet the third condition because the application or not of a United States treaty is in dispute, and that issue, if not reviewed before trial, is not effectively reviewable in a later appeal.
 
 
 22
 The hops merchants' motions to compel arbitration were based in part on chapter 2 of the Federal Arbitration Act. See 9 U.S.C. Secs. 201-08. Section 201 of that Act incorporates a treaty entered into by the United States directing district courts to recognize and enforce arbitration agreements between international merchants if the agreements meet certain criteria. See id. Sec. 201; Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention), adopted June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 3 (entered into force for the United States on Dec. 29, 1970).
 
 
 23
 The central issue in this case is whether the pre-December 1982 hops contracts are arbitrable. AB claims they are not because those contracts do not contain an arbitration clause. The hops merchants contend they are because the arbitration clause included in later contracts embraces disputes "arising out of or relating to," ante at 472, the earlier contracts. Arguably, the parties in this case are within the scope of the Convention's clearly stated directive to arbitrate. By refusing to entertain these appeals for lack of jurisdiction under Enelow-Ettelson the legal and practical value of arbitration under the treaty is lost entirely, and the hops merchants are forced to undergo a lengthy court proceeding before they can obtain appellate review of their initial claim that all the hops contracts are arbitrable.
 
 
 24
 The Supreme Court recently has affirmed a strong federal policy favoring arbitration as a means of dispute resolution. See, e.g., Shearson/American Express, Inc. v. McMahon, --- U.S. ----, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); Perry v. Thomas, --- U.S. ----, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987). It is also apparent that in the case of international contracts involving arbitration, the rules and results in the domestic arbitration setting are not necessarily conclusive. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985); Scherk v. Alberto-Culver Co., 417 U.S. 506, 515-20, 94 S.Ct. 2449, 2455-57, 41 L.Ed.2d 270 (1974). For that reason, cases in which similar orders in the domestic arbitration context have been held not appealable under Cohen are neither binding nor persuasive authority. Indeed if we are to give the Convention its proper effect under the supremacy clause of the Constitution we cannot ignore its clear intent, which the court does by refusing to determine at the outset to what extent an obligation to arbitrate exists. I would follow a course that takes note of the international setting of this contract dispute and the existence of the Convention's goal to enforce international arbitration agreements. Therefore, I believe we should take jurisdiction over these appeals as appeals from a final collateral order under section 1291.
 
 
 25
 In denying section 1292(a)(1) jurisdiction the court has passed over the treaty implications of an agreement between international merchants to arbitrate their disputes. One court of appeals has kept sight of these ramifications and has recognized that an order requiring arbitration at an agreed location (in this case Munich, West Germany, ante at 471 "would be, in effect, a mandatory injunction," and has taken section 1292(a)(1) injunction jurisdiction. See Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co., 767 F.2d 1140, 1149 & 1149 n. 24 (5th Cir.1985) (Cohen analysis not undertaken in context of admiralty case).
 
 
 26
 In my view we should take jurisdiction over these appeals under either section 1292(a)(1) or section 1291 and proceed without delay to the merits of that portion of the district court's order denying the hops merchants' motions to compel arbitration of AB's antitrust claims relating to the parties' pre-December 1982 hops contracts.
 
 
 
 [1]
 The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 According to Brief for Appellee (AB) at 6, the defendants in the other brewers' antitrust cases have all settled
 
 
 [3]
 On cross-appeal (No. 87-1380), AB argues that, assuming the court of appeals has jurisdiction over the appeals, the district court erred in dismissing AB's antitrust claims involving the post-December 1982 hops contracts. AB argues the district court should instead have stayed those antitrust claims pending arbitration
 
 
 [4]
 Federal securities fraud claims are now subject to arbitration. Shearson/Am. Express, Inc. v. McMahon, --- U.S. ----, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (claims under Securities Exchange Act of 1934)
 
 
 [5]
 Judge Posner of the Seventh Circuit has been a tireless critic of the Enelow-Ettelson rule. See, e.g., Olson v. Paine, Webber, Jackson & Curtis, Inc., 806 F.2d 731 (7th Cir.1986)