842 F.2d 685
 UNITED STATES of America
v.
PANHANDLE EASTERN CORP., Panhandle Eastern Pipe Line Co.;
Trunkline Gas Co.; Trunkline LNG Co.; General Dynamics
Corp.; Moore McCormack Resources., Inc.; Moore McCormack
LNG Transport, Inc.; Morgas, Inc.; Pantheon, Inc.; Pelmar
Co.; Lachmar.
Appeal of TRUNKLINE LNG CO.
 No. 87-3711.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
 March 8, 1988.
Decided March 21, 1988.
 
 Michael Joseph, E. Alex Blanton, Dyer, Ellis, Joseph & Mills, Washington, D.C., for appellant.
 Richard T. Franch, Robert T. Markowski, Robert R. Stauffer, Jenner & Block, Chicago, Ill., for Gen. Dynamics Corp.
 Thomas J. Horton, Michael J. Hurley, Ralph J. Savarese, Howrey & Simon, Washington, D.C., for Moore McCormack LNG Transport, Inc.
 Richard K. Willard, Asst. Atty. Gen., Washington, D.C., William C. Carpenter, Jr., U.S. Atty., Sue L. Robinson, Asst. U.S. Atty., Wilmington, Del., J. Christopher Kohn, Robert M. Hollis, Andrea Larry, Gregory A. Harrison, Civil Div., Dept. of Justice, Washington, D.C., Robert J. Patton, Jr., Richard Lorr, Jay Gordon, Maritime Admin. Dept. of Transp., Washington, D.C., for the U.S.
 Before WEIS, GREENBERG, and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 GREENBERG, Circuit Judge:
 
 
 1
 This matter is before the court on an appeal brought by Trunkline LNG Co., pursuant to 28 U.S.C. Sec. 1292(a)(1), from an order entered October 19, 1987 denying a motion made by it and certain other defendants within its corporate family seeking a stay of portions of this case on the theory that the claims made by the plaintiff, the United States of America, are subject to arbitration. We determine that we do not have jurisdiction and thus we will dismiss the appeal.
 
 
 2
 While the transactions leading to this appeal are quite complicated, they need only be summarized. This action stems from a guarantee of $197,500,000 in bonds issued by the Secretary of Commerce under Title XI of the Merchant Marine Act of 1936, as amended, 46 U.S.C. Secs. 1271-1279C, for the construction of two liquid natural gas tankers owned by a partnership named Lachmar whose partners when the guarantee was made were Morgas, Inc., Pantheon, Inc., and Pelmar Company, respectively subsidiaries of Moore McCormack Resources, Inc., General Dynamics Corp., and Panhandle Eastern Corporation.[1] The tankers were constructed to carry liquid natural gas from Algeria to the United States pursuant to an agreement, called a transportation agreement, between Lachmar and Trunkline LNG, a subsidiary of Panhandle Eastern Corporation, which required Trunkline LNG to ship minimum quantities of the gas to Louisiana and to pay Lachmar for a minimum level of shipments even if they were not made.[2] The transportation agreement required arbitration of certain disputes. To secure the United States for its guarantee, Lachmar assigned security interests to the Maritime Administration in the tankers and, with the consent of Trunkline LNG, also assigned the transportation agreement to the Maritime Administration. However, neither the United States nor the Maritime Administration assumed any obligations under the transportation agreement.
 
 
 3
 The tankers were constructed and put into service but Trunkline LNG subsequently invoked a force majeure clause in the transportation agreement, suspended shipments and refused to make payments to Lachmar which then asserted a claim under the arbitration clause of the transportation agreement against Trunkline LNG. While there was a dispute as to arbitrability because the Maritime Administration was not a party to the arbitration, in litigation originating in the United States District Court for the Southern District of New York, the Court of Appeals for the Second Circuit held that the Maritime Administration did not assume Lachmar's duty to arbitrate under the agreement and was thus not a necessary or indispensable party to the arbitration. Lachmar v. Trunkline LNG Co., 753 F.2d 8 (2d Cir.1985). Therefore, the arbitration went forward. Ultimately the Lachmar-Trunkline LNG dispute was settled when General Dynamics and Moore McCormack respectively sold their interests in Lachmar to Panhandle Eastern for $90,000,000 and $45,000,000. Lachmar's claim against Trunkline LNG was then dismissed.[3] The Maritime Administration did not consent to the settlement which resulted in no payments to the Maritime Administration or the United States.
 
 
 4
 The United States, which was concerned that the bonds it had guaranteed might not be paid, on April 10, 1987 brought this action against Lachmar, Trunkline LNG and the other corporations already mentioned.[4] In the complaint the United States set forth in detail the background leading to the Algerian transaction and the financing and construction of the tankers. Further, the complaint described the transportation agreement, the suspension of payments under it and the circumstances and terms of the settlement of the arbitration. The complaint asserted that the Maritime Administration advised Lachmar that the proposed settlement of the arbitration would violate the security agreement.
 
 
 5
 The United States alleged that the defendants were liable to it on various theories including breach of contract, commission of torts, making fraudulent conveyances, and violation of statutes.[5] It sought, among other relief, rescission of the sale of the interests in Lachmar, voiding of the dismissal of the arbitration, a declaration that its security interests attached to the $135,000,000 paid for the Lachmar interests, an injunction against sales of assets in Lachmar, Pelamar, Pantheon, and Morgas, imposition of a constructive trust on accounts of General Dynamics for $90,000,000 and of Moore McCormack for $45,000,000 for the benefit of the United States, and a declaration that the $135,000,000 paid for the interests of General Dynamics and Moore McCormack in Lachmar is an equitable asset of the United States. In addition, the United States asked that the corporate veils of certain of the parties be pierced so that their assets would be available to satisfy its claims. Thereafter the United States filed an amended complaint somewhat expanding upon its claims but for our purposes not significantly changing its claims for relief.
 
 
 6
 Trunkline LNG and the other defendants associated with Panhandle Eastern moved for a stay of the portion of the complaint related to Trunkline LNG's alleged breach of the transportation agreement. Specifically, as Trunkline LNG explains in its brief, the stay was sought as to the following:
 
 
 7
 These are the first five counts, which allege that TLC's [Trunkline LNG's] 1983 suspension of shipments and payments were in breach of the Transportation Agreement, and counts XXII-XXIV, which allege that affiliates of TLC tortiously caused the allegedly unauthorized suspension by TLC. With respect to all eight of these counts plaintiff requests an award of damages. TLC sought no stay with respect to the remaining 27 counts of the complaint, which are directed largely at the proceeds of the settlement of the Lachmar/TLC arbitration.
 
 
 8
 In a comprehensive opinion the district judge denied the motion as he reasoned that the Maritime Administration had "left no stone unturned to ensure that it would have no obligations under" the transportation agreement and it had never agreed to arbitrate. United States v. Panhandle Eastern Corp., 672 F.Supp. 149, 154 (D.Del.1987). This appeal followed.
 
 
 9
 It is obvious, of course, that the appeal is interlocutory and thus ordinarily we would have no jurisdiction to hear it. See Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 59 n. 1 (3d Cir.1985); Danford v. Schwabacher, 488 F.2d 454, 455 (9th Cir.1973). However, Trunkline LNG seeks to avoid dismissal of the appeal by invoking the Enelow-Ettelson rule derived from Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935) and Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). See also Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955). Under the Enelow-Ettelson rule an order of a court granting or denying a stay of its own proceedings is appealable if prior to the merger of law and equity the action would have been considered to have been at law and if the stay is sought to permit prior determination of an equitable defense or counterclaim. See Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1072-73 (3d Cir.1983). See also Osterneck v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 841 F.2d 508, 509 (3d Cir.1988). In those circumstances, the grant or denial of a stay is analogous to the grant or denial of an injunction. See Enelow, 293 U.S. at 381-83, 55 S.Ct. at 311-12; Gold v. Johns-Manville Sales Corp., 723 F.2d at 1072. If, however, the action is equitable, the grant or denial of a stay is nothing more than an exercise of the court's inherent power to control the progress of the case before it and thus is not analogous to a decision granting or denying an injunction and is not appealable. See Enelow, 293 U.S. at 381-83, 55 S.Ct. at 311-12.
 
 
 10
 Here the second prong of the Enelow-Ettelson rule was met, as a defense asserting that a dispute must be resolved through arbitration is equitable. See Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d at 59-60 n. 1. Accordingly, we are concerned with whether this action should be characterized as being in law or in equity.
 
 
 11
 We are satisfied that the equitable aspects of this case are so substantial that they cannot possibly be regarded as merely incidental to an action predominantly at law. See H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffeurs & Helpers Local Union, 755 F.2d 324, 327 (3d Cir.1985); Nascone v. Spudnuts, Inc., 735 F.2d 763, 770 (3d Cir.1984). As we have indicated, the United States seeks imposition of constructive trusts, injunctive relief, piercing of corporate veils, and rescission. Thus while damages and legal relief are also sought, the equitable nature of this case is clear. See, e.g., Nascone v. Spudnuts, Inc., 735 F.2d at 770; Timberlake v. Oppenheimer & Co., Inc., 729 F.2d 515, 518 (7th Cir.1984); Carpenters Health and Welfare Fund v. Kenneth R. Ambrose, Inc., 727 F.2d 279, 284 (3d Cir.1983); Stateside Mach. Co. Ltd. v. Alperin, 526 F.2d 480, 484-85 (3d Cir.1975). Accordingly, the first prong of the Enelow-Ettelson test has not been met and we do not have jurisdiction.
 
 
 12
 We have not ignored the argument of Trunkline LNG that it only sought a stay with respect to the allegations of the United States that it breached the transportation agreement when it suspended shipments and payments and that only compensatory damages are sought for that breach. The fact is that all of the circumstances of the complaint as amended are so intimately related that for purposes of the Enelow-Ettelson rule this matter must be deemed equitable in character. See Mellon Bank, N.A. v. Pritchard-Keang Nam Corp., 651 F.2d 1244, 1249-50 (8th Cir.1981); Hussain v. Bache & Co., Inc., 562 F.2d 1287, 1290 (D.C.Cir.1977); Stateside Mach. Co. v. Alperin, 526 F.2d at 484-85. See also Porter v. Warner Holding Co., 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946). This is not a case in which a plaintiff under liberal joinder rules has in one complaint brought unrelated causes of action against a defendant. See Fed.R.Civ.P. 18(a).
 
 
 13
 In reaching our result we have not overlooked the judicial policy to preserve the right to a jury trial when legal and equitable issues are raised. See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Hussain v. Bache & Co., Inc., 562 F.2d at 1290. We simply do not find it germane here as we are not concerned with whether any party has a right to a trial by jury. We are instead motivated by the policy against allowing piecemeal appeals. See Gold v. Johns-Manville Sales Corp., 723 F.2d at 1072; Mellon Bank, N.A. v. Pritchard-Keang Nam Corp., 651 F.2d at 1249.
 
 
 14
 Further, we have not ignored Hilti, Inc. v. Oldach, 392 F.2d 368, 369 n. 1 (1st Cir.1968), and Travel Consultants, Inc. v. Travel Management Corp., 367 F.2d 334 (D.C.Cir.1966), cert. denied, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 785 (1967), cited by Trunkline LNG, which lend some support to its claim that the order is appealable on a theory that the complaint is divisible for Enelow-Ettelson purposes. We are simply not persuaded that we should attempt to fragment the action involving related matters and thus apply the Enelow-Ettelson rule broadly as in an earlier case we pointed out that the rule lacks a rational basis. See H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffeurs & Helpers Local Union, 755 F.2d at 327 n. 2. See also In re Hops Antitrust Litigation, 832 F.2d 470, 473 (8th Cir.1987). We also point out that the court in Travel Consultants, Inc. v. Travel Management Corp., expressed some dissatisfaction with the result it reached (see 367 F.2d at 338) and the court in Hilti, Inc. v. Oldach seems not to have addressed the question of whether the presence of significant equitable elements in a case requires that an entire action be regarded as equitable for purposes of the Enelow-Ettelson rule. See 392 F.2d 369 n. 1.
 
 
 15
 The appeal will be dismissed.
 
 
 
 [1]
 The federal program involved here has been transferred to the Department of Transportation. See 46 U.S.C. Sec. 1114 (1982)
 
 
 [2]
 We have simplified the description of the corporate structures as these precise details need not be set forth because of the limited issue on which we resolve this appeal
 
 
 [3]
 Again we have simplified the description of the corporate interests involved
 
 
 [4]
 In its brief the United States asserts that $125,000,000 of the bonds are outstanding
 
 
 [5]
 Of course the United States does not assert that all defendants are liable on all theories